UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
GOVERNMENT EMPLOYEES INSURANCE CO., et al.,

                              Plaintiffs,

        -against-                                 Docket No.: CV 12-04236
                                                       (MKB)(CLP)

EVA GATEVA, MD, et al.,

                              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS HOLLIS MEDICAL SERVICES, PC, PARK AVENUE MEDICAL CARE, PC, GENTLE CARE MEDICAL SERVICES, PC, and EVA GATEVA, PC

RIVKIN RADLER LLP
Barry I. Levy, Esq.
Michael A. Sirignano, Esq.
Ryan Goldberg, Esq.
926 RXR Plaza
Uniondale, New York 11556-0926
Telephone:    (516) 357-3000
Facsimile:    (516) 357-3333

*Counsel for Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

RELEVANT FACTS ............................................................................................... 2

    I.    Pertinent Procedural History............................................................... 2

    II.   GEICO's Allegations Against The Defaulting Defendants .................. 2

THE STANDARDS ON THIS MOTION ................................................................. 4

ARGUMENT .......................................................................................................... 8

    I.    The Facts Set Forth In GEICO's Complaint Establish GEICO's
        Entitlement To A Default Judgment Against The Defaulting Defendants ............ 8

        A.    GEICO Should Be Awarded A Declaratory Judgment Against
            the PC Defendants.................................................................... 8

        B.    GEICO Should Be Granted Default Judgment On Its Common
            Law Fraud Claims Against Dr. Gateva and the PC Defendants ............... 12

        C.    GEICO Should Be Granted Default Judgment On Its Unjust
            Enrichment Claim Against the PC Defendants and Dr. Gateva ................. 20

        D.    GEICO Should Be Granted Default Judgment on its
            Substantive RICO Causes of Action against Dr. Gateva.......................... 21

            1.    The Enterprise................................................................ 21

            2.    Racketeering Activities .................................................. 21

            3.    The Participation............................................................ 22

            4.    The Pattern .................................................................... 23

        E.    GEICO Should Be Granted Default Judgment on its RICO
            Conspiracy Causes of Action against Dr. Gateva.................................... 26

        F.    GEICO is Entitled to Treble Damages on its RICO Claims..................... 27

        G.    GEICO is Entitled to Pre-Judgment Interest on its Fraud
            Claims ....................................................................................... 28

        H.    Joint and Several Liability Should Be Imposed....................................... 29

CONCLUSION...................................................................................................... 29

## TABLE OF AUTHORITIES

**Page(s)**

CASES

520 E. 81st St. Assocs. v. New York,
    19 A.D.3d 24, 799 N.Y.S.2d 1 (1st Dept. 2005)........................................................28

Agamede Ltd. v. Life Energy & Tech. Holdings, Inc.,
    2007 U.S. Dist. LEXIS 4698 (E.D.N.Y. 2007) ...........................................................5

AIU Insurance Co. v. Olmecs Med. Supply, Inc.,
    2005 U.S. Dist. LEXIS 29666 (E.D.N.Y. 2005)........................................12, 13, 14

Allstate Ins. Co. v. Ahmed Halima,
    2009 U.S. Dist. LEXIS 22443 (E.D.N.Y. 2009) ...........................................14,19, 23

Allstate Ins. Co. v. Valley Physical Medicine & Rehabilitation, P.C.,
    2009 U.S. Dist. LEXIS 91291 – 20 (E.D.N.Y. 2009)....................................22, 23, 27

Allstate Insurance. Co. v. Etienne,
    2010 U.S. Dist. LEXIS 113995 (E.D.N.Y. 2010)........................................................17

American Home Assurance Co. v. Morris Industrial Builders, Inc.,
    192 A.D.2d 477, 597 N.Y.S.2d 27 (2d Dept. 1993) ...................................................29

Annuity, Pension, Welfare & Training Funds of the Int'l Union of Operating Eng'rs Local
    14-14B v. Angel Constr. Group, LLC,
    2009 U.S. Dist. LEXIS 126620 .................................................................................7

Au Bon Pain Corp. v. Artect, Inc.,
    653 F.2d 61 (2d Cir. 1981) .................................................................................5, 6

Beauford v. Helmsley,
    865 F.2d 1386 (2d Cir. 1989) ................................................................................23

Cardinal Chem. Co. v. Morton Int'l, Inc.,
    508 U.S. 83, 113 S. Ct. 1967, 124 L. Ed. 2d 1 (1993)..............................................8

Carriafielio-Diehl & Associates, Inc. v. D & M Elec. Contracting, Inc.,
    12 A.D.3d 478, 784 N.Y.S.2d 617 (2d Dept. 2004) ..................................................21

Channel Master Corp. v. Aluminum Ltd. Sales,
    4 N.Y.2d 403, 176 N.Y.S.2d 259 (1958) ...............................................................12

Cont'l Ins. Co. v. Huff Enters.,
    2009 U.S. Dist. LEXIS 104126 (E.D.N.Y. 2011)......................................................7

County of Suffolk v. Amerada Hess Corp.,
  447 F. Supp. 2d 289 (S.D.N.Y. 2006) ........................................................................29

D'Orange v. Feely,
  894 F. Supp. 159 (S.D.N.Y. 1995) ............................................................................28

De Falco v. Bernas,
  244 F.3d 286 (2d Cir. 2001) ................................................................................22, 24

E.R. Squibb & Sons, Inc. v. Lloyd's & Co.,
  241 F.3d 154 (2d Cir. 2001) .....................................................................................9

G-I Holdings v. Baron & Budd,
  238 F. Supp. 2d 521 (S.D.N.Y. 2002) .......................................................................25

Golden Pacific Bancorp v. F.D.I.C.,
  273 F.3d 509 (2d Cir. 2001) .....................................................................................21

Gov't Emples. Ins. Co. v. Damien,
  2011 U.S. Dist. LEXIS 138365 (E.D.N.Y. 2011) ............................6, 19, 20, 24, 28

Government Employees Insurance Company, et al. v. Hollis Med. Care, P.C.,
  2011 U.S. Dist. LEXIS 130721 (E.D.N.Y. 2012) ......................................17, 22, 27

Government Employees Insurance Company, et al.  v. Infinity Health Prods.,
  2012 U.S. Dist. LEXIS 58058 (E.D.N.Y. 2012) .....................................................8,11

Government Employees Insurance Company, et al. v. Ortho-Med Surgical Supply, Inc.
  10-CV-3037 (SJ)(RER) ..............................................................................................8

Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.,
  973 F.2d 155 (2d Cir. 1992) .......................................................................................5

Kaye v. Grossman,
  202 F.3d 611 (2d Cir.2000) ......................................................................................21

Lazard Freres & Company v. Protective Life Insurance Company,
  108 F.3d 1531 (2d Cir. 1997) ...................................................................................18

Lerner v. Fleet Bank, N.A.,
  459 F.3d 273 (2d Cir. 2006) ......................................................................................15

Lewis v. S.L. & E., Inc.,
  831 F.2d 40 (2d Cir. 1987) ........................................................................................29

Liberty Mut. Ins. Co. v. Blessinger,
  No. 06-cv-391(NGG)(ARL), 2007 U.S. Dist. LEXIS 21781 (E.D.N.Y. 2007) .........24

Manufacturers Hanover Trust Co. v. Drysdale Sec. Corp.,
  801 F.2d 13 (2d Cir.1986) ......................................................................................28

Maryland Casualty Co. v. Rosen,
  445 F.2d 1012 (2d Cir. 1971) ....................................................................................9

Mason Tenders v. Taher Contracting Co., Inc.,
  2005 U.S. Dist. LEXIS 43364 (S.D.N.Y. 2005)........................................................4

MBIA Ins. Corp. v. Royal Bank of Canada,
  2010 NY Slip Op 51490U (Sup Ct. Westchester Co. 2010) .....................................18

Metro. Transp. Auth. v. Contini,
  2005 WL 1565524 (E.D.N.Y. 2005).........................................................................25

NAP, Inc. v. Shuttletex, Inc.,
  112 F. Supp. 2d 369 (S.D.N.Y. 2000) ........................................................................9

Olin Corp. v. Consol. Aluminum Corp.,
  5 F.3d 10 (2d Cir. 1993)..............................................................................................9

Orion Pictures Corp. v. Showtime Networks, Inc.,
  4 F.3d 1095 (2d Cir. 1993) ..........................................................................................9

Oxford Health Plans (NY) Inc. v. Bettercare Health Care Pain Management & Rehab PC,
  305 A.D.2d 223 (1st Dep't 2003) ..............................................................................14

Perfect Dental, PLLC v. Allstate Insurance Company,
  538 F. Supp. 2d 543 (E.D.N.Y. 2007)........................................................................10

Ravo v. Rogatnick,
  70 N.Y.2d 305, 520 N.Y.S.2d 533, 514 N.E.2d 1104 (1987) ....................................29

RLI Ins. Co. v. May Constr. Co.,
  2011 U.S. Dist. LEXIS 30673 (S.D.N.Y. 2011)..........................................................7

S&S Mach. Corp. v. Wuhan Heavy Duty Mach. Tool Group Co.,
  2012 U.S. Dist. LEXIS 38608 (E.D.N.Y. 2012).........................................................6

Salinas v. United States,
  522 U.S. 52, 118 S. Ct. 469, 139 L. Ed. 2d 352 (1997)............................................27

Schlaifer Nance & Co. v. Estate of Warhol,
  119 F.3d 91 (2nd Cir. 1997)......................................................................................12

Schwimmer v. Allstate Ins. Co.,
  176 F.3d 648 (2d Cir. 1999) ......................................................................................28

SKS Constructors, Inc. v. Drinkwine,
    458 F. Supp. 2d 68 (E.D.N.Y. 2006)......................................................................24

Spool v. World Child Int'l Adoption Agency,
    520 F.3d 178 (2d Cir. 2008) ...............................................................................24

St. Paul Fire & Marine Ins. Co. v. Fox Insulation Co.,
    1999 WL 782333 (W.D.N.Y. September 30, 1999) ...............................................29

St. Paul Travelers Ins. Co. v. Nandi,
    2007 WL 1662050 (Sup. Ct. Queens Co. 2007).....................................................20

State Farm Mut. Auto. Ins. Co. v. Cohan,
    2009 U.S. Dist. LEXIS 125653 (E.D.N.Y. 2009).........................................5, 10, 11

State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.,
    2008 U.S. Dist. LEXIS 71156 (E.D.N.Y. 2008) ........................15, 20, 21, 22, 23, 27

State Farm Mut. Auto. Ins. Co. v. Grafman,
    655 F. Supp. 2d 212 (E.D.N.Y. 2010)....................................................11, 15, 17, 22

State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C.,
    589 F. Supp. 2d 221 (E.D.N.Y. 2008).........................................................15, 19, 22

State Farm Mut. Auto. Ins. Co. v. Kalika,
    2006 U.S. Dist. LEXIS 97454 (E.D.N.Y. 2006) ...............................................11, 24

State Farm v. Bronx Healthcare Medical, P.C.,
    2009 U.S. Dist. LEXIS 125785 (E.D.N.Y. 2009).................................................11

Steinhardt Group, Inc. v. Citicorp,
    272 A.D.2d 255, 708 N.Y.S.2d 91 (1st Dept 2000)...............................................18

Tahini Investments, Ltd. v. Bobrowsky,
    99 A.D.2d 489, 470 N.Y.S.2d 431 (2d Dept 1984) ...............................................18

Terwilliger v. Terwilliger,
    206 F.3d 240 (2d Cir. 2000) ...............................................................................28

Tosto v. Zelaya,
    2003 U.S. Dist. LEXIS 8085 (S.D.N.Y. 2003)....................................................28

Transamerica Ins. Finance Corp. v. Fireman's Fund Ins. Co.,
    1992 U.S. Dist. LEXIS 17633 (S.D.N.Y. 1992)..................................................18

United States v. Yanotti,
    541 F.3d 112 (2d Cir. 2008) ...............................................................................27

Universal Acupuncture v. State Farm,
    196 F. Supp. 2d 378 (S.D.N.Y. 2002) ...............................................................9, 14

USA v. Zemlyansky, et al.,
    Docket No. 1:12-cr-00171 (JPO) ...............................................................................3

**STATUTES**

18 U.S.C. § 1341 ...........................................................................................................22

18 U.S.C. § 1961(4) .......................................................................................................21

18 U.S.C. § 1961(5) .......................................................................................................23

18 U.S.C. § 1964(c) ........................................................................................................27

28 U.S.C. § 2201(a) ..........................................................................................................9

C.P.L.R. § 5001 .............................................................................................................28

C.P.L.R. §§ 5001(a), ......................................................................................................28

C.P.L.R. § 5001(b) .........................................................................................................28

N.Y.S. Insurance Law § 5102(a)(1) ...........................................................9, 10, 16, 17

N.Y.S. Insurance Law §403 ..........................................................................................18

28 U.S.C. § 1961(1)(B) ...................................................................................................21

**OTHER AUTHORITIES**

11 N.Y.C.R.R. § 65-3.11 ...............................................................................................10

11 N.Y.C.R.R. § 65-3.11(a) ...........................................................................................17

11 N.Y.C.R.R. § 65-3.16(a)(12) ..............................................................................10, 17

Fed. R. Civ. P. 55(a) .....................................................................................................1,4

Fed. R. Civ. P. 55(b)(2).........................................................................................1, 4, 5, 6

Fed. R. Civ. P. 55(b)(10)..................................................................................................4

Fed. R. Civ. P. 9(b)........................................................................................................15

Moore's Federal Practice § 55.20[4].................................................................................4

**PRELIMINARY STATEMENT**

Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company (collectively, "Plaintiffs" or "GEICO"), respectfully submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. 55(b)(2), for default judgments against defendants Hollis Medical Services, P.C. ("Hollis"), Park Avenue Medical Care, P.C. ("Park Avenue"), Gentle Care Medical Services, P.C. ("Gentle Care")(collectively "PC Defendants") and Eva Gateva, MD ("Dr. Gateva")(collectively, "Gateva Defendants" or "Defaulting Defendants").

The record is clear. Each of the Defaulting Defendants was duly served with the Summons and Complaint in this action but has failed to timely appear. The Clerk of the Court, in accordance with Fed. R. Civ. P. 55(a) has entered each of the Defaulting Defendants' defaults, and the only individual defendant who is subject to this motion, Dr. Gateva, does not currently serve in the United States Military. As set forth more fully below, given these facts and the facts established by the Defaulting Defendants' respective defaults, GEICO's Complaint sets forth, among other claims, legally sufficient claims against Hollis, Park Avenue and Gentle Care for a declaratory judgment, and against the Defaulting Defendants for common law fraud and unjust enrichment. Additionally, GEICO's Complaint sets forth legally sufficient claims against Dr. Gateva for RICO violations.

Accordingly, GEICO respectfully requests that default judgments be entered against the Defaulting Defendants as to each of these claims, including damages against the Defaulting Defendants plus interest, the costs and disbursements incurred in connection with the prosecution of this action, as well as such other and further relief as to the Court may seem just and proper.

## RELEVANT FACTS

### I.    Pertinent Procedural History

True and correct copies of the Summons and Complaint (the "Complaint") were served on each of the Defaulting Defendants that are subject to this motion and all proofs of service were subsequently filed with the Court via ECF. (See accompanying March 25, 2013 Declaration of Ryan Goldberg ("Goldberg Decl."), Docket No. 1 and Docket Entry Nos. 6, 7, 8, 9 and 10).[1]

Due to the Defaulting Defendants' failure to appear in this action, the Clerk of the Court, on GEICO's motion, entered Hollis', Park Avenue's, and Gentle Care's defaults on October 24, 2012 and as to Dr. Gateva, entered her default on November 2, 2012.  (See Docket Entry Nos. 17, 19, 20 and 22).

### II.    GEICO's Allegations Against The Defaulting Defendant

The facts relating to the claims and the damages sought in this action are more fully set forth in the accompanying Goldberg Decl. and Declaration of Jennifer Fogarty ("Fogarty Decl."), together with the exhibits annexed thereto, and the Complaint in this action. GEICO respectfully refers the Court to those materials.

Briefly, GEICO's Complaint alleges the Defaulting Defendants – a doctor, (Dr. Gateva) and multiple professional corporations she purportedly owns (Hollis, Park Avenue and Gentle Care) – exploited New York's no-fault laws by submitting large-scale fraudulent no-fault billing for medically useless services. In reliance on this fraudulent billing, GEICO alleges that it paid the Defaulting Defendants over one million dollars. GEICO therefore seeks damages under the civil RICO Act, for common law fraud, and for unjust enrichment, as well as a declaration that it is not liable on any of the Defendants' pending fraudulent billing. See Docket No. 1, passim.

---

[1] Unless otherwise noted, all exhibits referenced herein are annexed to the Goldberg Decl., submitted herewith.

As detailed in the Complaint:

   (i)    Hollis, Park Avenue and Gentle Care were fraudulently incorporated and owned and controlled by non-medical professionals and, therefore, were never eligible to recover No-Fault benefits;

   (ii)   laypeople "purchased" Dr. Gateva's license for a fixed sum, or some ongoing payment, and used the license to fraudulently incorporate the PC Defendants;

   (iii)  Hollis, Park Avenue and Gentle Care engaged in unlawful fee splitting with non-medical professionals and, therefore, were never eligible to recover No-Fault benefits;

   (iv)  the laypeople conceal their secret and unlawful ownership and control over the professional corporations by causing the professional corporations to enter into phony "management", "billing", "marketing" and "lease" agreements with themselves and entities that they control;

   (v)   the laypeople use the phony "management", "billing", "marketing" and "lease" agreements they establish with the professional corporations to unlawfully siphon all of the professional corporations' profits to themselves;

   (vi)  Hollis, Park Avenue and Gentle Care serve as vehicles through which fraudulent no-fault claims for reimbursement are submitted to GEICO for medical services allegedly provided to individuals involved in New York automobile accidents ("Insureds");

   (vii)  The laypeople use Hollis, Park Avenue and Gentle Care to fraudulently bill GEICO by exaggerating and inflating the charges, billing for services which are performed pursuant to a fraudulently pre-determined protocol without regard to the actual medical necessity of the treatments, and billing for services which are not rendered; and

   (viii) In many cases, Hollis, Park Avenue and Gentle Care have no right to receive payment for any pending bills submitted to GEICO because the billed-for services were performed by independent contractors, rather than by the Defendants' employees.

(See Docket No. 1 at Exhibit "5").

Bolstering the allegations in the Complaint, on or about February 29, 2012, a federal indictment (the "Gateva Indictment") in USA v. Zemlyansky, et al., Docket No. 1:12-cr-00171

(JPO) was unsealed in the United States District Court for the Southern District of New York, charging the masterminds among others – with health care fraud, conspiracy, mail fraud, and conspiracy to commit money laundering in connection with a systematic scheme to defraud New York automobile insurance companies of more than $275,000,000.00 under the No-Fault Laws. Dr. Gateva has been charged with Conspiracy to Commit Health Care Fraud and Conspiracy to Commit Mail Fraud.  See Docket No. 1 at ¶27.

Among other things, the Gateva Indictment – as supplemented by papers that later were served by the United States Attorney (See Exhibit "A").

– alleges, in substance, that:

(i)     Gateva (and lay-persons) unlawfully set up Park Avenue for the sole purpose of defrauding insurance companies under the No-Fault Laws.

(ii)    Gateva paid kickbacks to referring healthcare providers in exchange for which the referring healthcare providers referred patients to Park Avenue for medically unnecessary medical services.

(iii)   Park Avenue routinely billed automobile insurers for services that either were never provided and/or were medically unnecessary.

(See Exhibit "A").

## THE STANDARDS ON THIS MOTION

Rule 55(a) of the Federal Rules of Civil Procedure provides that the Clerk of the Court "must" enter a default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by [the] rules." Id. As discussed above, the defaulting defendants' defaults already have been entered in this case.

In the rare case when the complaint seeks a sum certain, the Clerk of the Court may enter a judgment of default pursuant to Rule 55(b)(1)(10). See Moore's Federal Practice § 55.20[4] (Matthew Bender 3d Ed). In all other cases, the party seeking the default judgment must apply to the Court. See Fed. R. Civ. P. 55(b)(2); Mason Tenders v. Taher Contracting Co., Inc., 2005 U.S. Dist.

4

LEXIS 43364 at *2 (S.D.N.Y. 2005).  Since GEICO's damages are not for a liquidated amount, and also because GEICO seeks declaratory judgment in this action, this application is being made to the Court.

"Once found to be in default, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability and the Court accepts those allegations as true." Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); see also Greyhound Exhibitgroup v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992)(same).  As such, once a defendant has defaulted, "[a] plaintiff must . . . establish that on the law it is entitled to the relief it seeks, given the facts as established by the default." Agamede Ltd. v. Life Energy & Tech. Holdings, Inc., 2007 U.S. Dist. LEXIS 4698 at * 3 (E.D.N.Y. 2007)(internal quotations and citations omitted).

With respect to damages, State Farm Mut. Auto. Ins. Co. v. Cohan, 2009 U.S. Dist. LEXIS 125653 (E.D.N.Y. 2009) explained: "[A] default 'effectively constitutes an admission that the damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged.'" Id. at *9-10 (quoting Cablevision Sys. New York City Corp. v. Abramov, 980 F. Supp. 107, 111 (E.D.N.Y. 1997)).  Cohan continued: "The movant must prove that the 'compensation sought relate[s] to the damages that naturally flow from the injuries pleaded.'" Id. at *10 (quoting Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 159 (2d Cir. 1993)).

While the Court may conduct a hearing under Rule 55(b)(2) of the Federal Rules of Civil Procedure, "[a]n evidentiary hearing is not required so long as there is a basis for the damages awarded[,]" such as "detailed affidavits and other documentary evidence." Id. (citing Transatlantic Marine Claims Agency v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) and Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991))(emphasis added). See also  Government

Employees Insurance Company, et al. v. Damien, 2011 U.S. Dist. LEXIS 138365 at * 22 (E.D.N.Y. 2011) adopted by 2011 U.S. Dist. LEXIS 136661 (E.D.N.Y. 2011)(determining default judgment damages based on plaintiffs' submissions, and noting that "A court must conduct an inquiry to ascertain the amount of damages with reasonable certainty. … The Second Circuit has approved the holding of an inquest by affidavit, without a hearing, as long as the court has ensured that there was a basis for the damages specified in the default judgment.")(Internal quotations and citation omitted).

As indicated above, Courts often consider only the allegations in the complaint when determining liability on a motion for default judgment. See, e.g., Au Bon Pain Corp., supra. Even so, this Court may consider matters outside of the Complaint in determining whether default judgment is appropriate with respect to GEICO's declaratory judgment claim.

For instance, Fed. R. Civ. P. 55(b)(2) explicitly permits Courts to "conduct hearings or make referrals … when, to enter or effectuate [default] judgment, it needs to … establish the truth of any allegation by evidence … ." Thus, Rule 55 contemplates that a Court may consider matters outside of the pleading in determining whether to impose liability in the context of a default judgment motion.

In keeping with this standard, Courts within the Second Circuit have considered affidavits and other materials in addition to a party's Complaint in determining whether a plaintiff has established liability on a default judgment motion. For example, in S&S Mach. Corp. v. Wuhan Heavy Duty Mach. Tool Group Co., 2012 U.S. Dist. LEXIS 38608 (E.D.N.Y. 2012), adopted by 2012 U.S. Dist. LEXIS 38605, the plaintiff asserted a thinly-pleaded breach of contract claim against the defendant, who subsequently defaulted. Although the Court observed that the complaint, standing alone, was insufficient to establish the defendant's liability for

purposes of default judgment, the Court considered the affidavit of plaintiff's principal – which "contain[ed] all of the factual details on [defendant's] alleged breaches that were omitted from the Complaint" – in determining that the plaintiff had established liability. Id. at * 20 - * 22.

Similarly, in Cont'l Ins. Co. v. Huff Enters., 2009 U.S. Dist. LEXIS 104126 at * 13 - * 16 (E.D.N.Y. 2011), a District Judge permitted a Magistrate Judge to consider a plaintiff's submissions – including affidavits – in determining whether, among other things, declaratory relief was warranted in the context of a defendant's default. As the Court reasoned, "[w]ithout considering issues beyond the Complaint, the court would be unable to determine whether the allegations establish liability. A further inquiry into the merits is required." Id.

Likewise, in Annuity, Pension, Welfare & Training Funds of the Int'l Union of Operating Eng'rs Local 14-14B v. Angel Constr. Group, LLC, 2009 U.S. Dist. LEXIS 126620 at * 5 - * 7 (E.D.N.Y. 2009)(Orenstein, M.J.), in considering liability on a motion for default judgment, the Court: (i) directed the plaintiffs to submit additional evidence, beyond the complaint, that they wished the Court to consider; and (ii) considered evidence submitted with the plaintiffs' attorneys' affidavit. See also RLI Ins. Co. v. May Constr. Co., 2011 U.S. Dist. LEXIS 30673 at * 7 - * 10 (S.D.N.Y. 2011)(court considered plaintiff's submissions, including affidavits and complaint, in deciding liability on motion for default judgment).

Accordingly, in determining whether GEICO has established the sufficiency of its declaratory judgment claim, the Court may consider, among other things, the Fogarty Decl., submitted herewith.

Below, GEICO sets forth that the facts pleaded are legally sufficient to state the causes of action asserted against the Defaulting Defendants.  Furthermore, there is recent precedent in this Court that addresses almost identical factual schemes as the schemes identified in GEICO's

Complaint herein.   See, Government Employees Insurance Company, et al. v. Ortho-Med Surgical Supply, Inc. 10-CV-3037 (SJ)(RER) and Government Employees Insurance Company, et al. v. Infinity Health Products, Ltd., et al. 10-CV-5611 (JG)(JMA).   In both cases, the Court concluded that GEICO's complaints competently alleged and sufficiently established its entitlement to judgment on it claims for fraud and unjust enrichment against the various retail defendants and its aiding and abetting fraud claims against the various wholesale defendants.   In the Infinity case, the Court also concluded that GEICO sufficiently established its entitlement to judgment on its RICO claims against Infinity, its owner and associated wholesalers.   In sum, this Court properly recognized the scheme perpetrated by Alev and duly recognized the wholesale defendants' importance to and extent of participation in the various schemes outlined in the respective complaints and accordingly entered judgments against them.   As such, judgment should be granted to GEICO against each of the Defaulting Defendants in this matter.

Below, GEICO sets forth that the facts pleaded are legally sufficient to state the causes of action asserted against the Defaulting Defendants.   In addition, in the accompanying declarations and exhibits annexed thereto, it is respectfully submitted that GEICO sets forth not only an adequate basis for its claims, but also sufficient proof of its damages such that no hearing on damages is required. Accordingly, GEICO respectfully requests a default judgment against Defendants Hollis, Park Avenue, Gentle Care and Dr. Gateva.

## ARGUMENT

### I.   The Facts Set Forth In GEICO's Complaint Establish GEICO's Entitlement To A Default Judgment Against The Defaulting Defendants

#### A.   GEICO Should Be Awarded A Declaratory Judgment Against the PC Defendants

As an initial matter, a party seeking a declaratory judgment from a district court must show the existence of an "actual case or controversy."   Cardinal Chem. Co. v. Morton Int'l, Inc., 508 U.S.

83, 95, 113 S. Ct. 1967, 124 L. Ed. 2d 1 (1993); 28 U.S.C. § 2201(a). An "actual controversy" is "real and substantial ... admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Olin Corp. v. Consol. Aluminum Corp., 5 F.3d 10, 17 (2d Cir. 1993) (internal citations omitted). Moreover, declaratory relief is appropriate: (i) where the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; or (ii) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings. See Maryland Casualty Co. v. Rosen, 445 F.2d 1012, 1014 (2d Cir. 1971); E.R. Squibb & Sons, Inc. v. Lloyd's & Co., 241 F.3d 154, 175 (2d Cir. 2001). A court has broad discretion to decide whether to render a declaratory judgment. See Orion Pictures Corp. v. Showtime Networks, Inc., 4 F.3d 1095, 1100 (2d Cir. 1993). In deciding whether a plaintiff has stated a claim for declaratory relief, a federal court applies the state substantive law of the forum in which it sits. See NAP, Inc. v. Shuttletex, Inc., 112 F. Supp. 2d 369, 372 (S.D.N.Y. 2000); see also Universal Acupuncture. v. State Farm Mutual Automobile Ins. Co., 196 F. Supp. 2d 378, 385 (S.D.N.Y. 2002)

GEICO's Complaint clearly establishes the existence of an actual case in controversy between GEICO and the PC Defendants regarding a massive fraudulent scheme by Dr. Gateva, the PC Defendants, non-physician laypeople who secretly and unlawfully own and control the medical professional corporations, and lay entities that the non-physician laypeople use to facilitate their secret and unlawful ownership and control over the medical professional corporations. Specifically, GEICO's request for declaratory relief is based upon the pervasive, fraudulent scheme whereby the PC Defendants continues to seek payment for bills containing: (i) false and fraudulent misrepresentations that the PC Defendants are lawfully licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11

N.Y.C.R.R. § 65-3.16(a)(12) when in fact, the PC Defendants are not properly licensed in that they are medical professional corporations that were fraudulently incorporated and have been owned and controlled by the Management Defendants, who are not licensed or certified physicians; (ii) false and fraudulent misrepresentations that the PC Defendants are lawfully licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12) when in fact the PC Defendants are not properly licensed in that they are medical professional corporations that engage in unlawful fee-splitting with the Management Defendants, who are not licensed or certified physicians; (iii) false and fraudulent misrepresentations that the pertinent medical services are medically necessary and performed in accordance with basic, legitimate medical treatment practices and (iv) false and fraudulent misrepresentations that the PC Defendants are eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.11 for the services that were performed when in fact the PC Defendants are not eligible to seek or pursue collection of No-Fault Benefits because the services were not provided by the PC Defendants' employees.  (See Docket No. 1 at ¶¶26-130).  Because the PC Defendants have defaulted and are deemed to have admitted these allegations, GEICO is entitled to a declaration that it is not obligated to pay outstanding claims by the PC Defendants that currently exceed $521,841.96 (See, Fogarty Decl. at ¶9).

Indeed, this Court has granted declaratory relief in a number of cases where the defendants were involved in similar schemes to defraud insurers by billing for charges that are not permissible under the no-fault laws.  See, e.g., Cohan, 2009 U.S. Dist. LEXIS 125653 at *11-12 (granting declaratory relief to insurer relating to unpaid claims by dental professional corporations for services performed by independent contractors because under the no-fault laws, professional corporations

10

have no right to bill for services of independent contractors), and cases cited therein; see also Perfect Dental, PLLC v. Allstate Insurance Company, 538 F. Supp. 2d 543, 549 (E.D.N.Y. 2007)(granting declaratory judgment in favor of insurers relating to unpaid claims by dental professional corporations for services performed by physical therapists who were independent contractors); see also State Farm Mut. Auto. Ins. Co. v. Kalika, 2006 U.S. Dist. LEXIS 97454 at *51-53 (E.D.N.Y. 2006) adopted by State Farm Mut. Auto. Ins. Co. v. Kalika, 2007 U.S. Dist. LEXIS 90322 (E.D.N.Y. 2007)(rejecting defendants' motion to dismiss insurer's claim for declaratory judgment that it was not obligated to pay outstanding claims for, among other things, medically unnecessary durable medical equipment); State Farm Mutual Auto Ins. Co. v. Grafman, 2009 U.S. Dist. LEXIS 86451 at *25-26 (E.D.N.Y. 2009)(rejecting defendants' motion to dismiss insurer's claim for declaratory judgment that it was not obligated to pay outstanding no-fault claims.)

Likewise, this Court has granted substantially similar declaratory relief in substantially similar cases on motions for default judgment. See, e.g., Gov't Emples. Ins. Co. v. Infinity Health Prods., 2012 U.S. Dist. LEXIS 58058 at * 11 - * 14 (E.D.N.Y. 2012), adopted by 2012 U.S. Dist. LEXIS 58060 (E.D.N.Y. 2012)(granting default judgment on, among other things, claim for declaratory judgment to the effect that insurers had no obligation to pay pending fraudulent no-fault claims); Cohan, 2009 U.S. Dist. LEXIS 125653 at * 11 - * 12 (same); State Farm v. Bronx Healthcare Medical, P.C., 2009 U.S. Dist. LEXIS 125785 (E.D.N.Y. 2009)(defaulting defendants not entitled to seek or collect no-fault benefits from State Farm).

Accordingly, GEICO's Complaint sets forth all of the requisite elements to establish a proper claim for a declaratory judgment in the context of this matter, and the requested declaration should be granted.

11

**B.      GEICO Should Be Granted Default Judgment On Its Common
Law Fraud Claims Against Dr. Gateva and the PC Defendants**

A claim for common law fraud in New York requires facts demonstrating that: (1) a

material misrepresentation or omission of fact, (2) made with knowledge of its falsity (i.e.,

scienter), (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5)

that causes damage to the plaintiff. See Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91,

98 (2nd Cir. 1997); see also Channel Master Corp. v. Aluminum Ltd. Sales, 4 N.Y.2d 403, 176

N.Y.S.2d 259, 261 (1958) ("To maintain an action based on fraudulent representations, whether

it be for the rescission of a contract or, as here, in tort for damages, it is sufficient to show that

the defendant knowingly uttered a falsehood intending to deprive the plaintiff of a benefit and

that the plaintiff was thereby deceived and damaged").

AIU Insurance Co. v. Olmecs Med. Supply, Inc., 2005 U.S. Dist. LEXIS 29666

(E.D.N.Y. 2005), is a similar case that provides a helpful overview for analysis of the fraud

claim.   In AIU Insurance Co., the Court denied motions to dismiss fraud claims by two medical

providers.  While medical providers were also defendants in AIU Insurance Co., the allegations

in that case, like those here, included claims that retailers of medical supplies and wholesalers of

medical supplies engaged in a fraudulent scheme to exploit the reimbursement formulas for

durable medical equipment under New York's No-Fault laws.  As here, the plaintiff insurance

companies in AIU Insurance Co. claimed, among other things, that the retail defendants

submitted fraudulent claims to them which included material misrepresentations as to the costs

allegedly incurred by the retail defendants in purchasing items from their wholesalers. Id. at *11.

The fraudulent claims in AIU Insurance Co. were supported not only by vague wholesale invoices,

but also by misleading generic prescriptions, and incomplete descriptions as to the equipment

provided that was "completely meaningless in determining the true kind and quality of any specific

item, the medical necessity of that item, or appropriate charges." Id. at * 11.  Likewise, in this case, the fraudulent claims were supported by misleading medical reports, fraudulently performed tests and generic falsified records.

In denying the motion to dismiss, the Court in AIU Insurance Co. noted that the plaintiffs included, in support of their RICO claims, a "detailed chart of 480 separate RICO events, including the Retail Defendant who submitted the claim, the claim number, the Supplies billed for, the prices charged, [and] the dates of the submissions," as well as lists noting the claims supported by the "prescriptions written by moving defendants …." Id. at 39-40. GEICO has submitted a similar chart in the present case.  See Docket No. 1, at Exhibit "1".  The Court in AIU Insurance Co. then referred to the chart in support of its finding that the common law fraud claims were sufficiently pleaded. Id. at * 46.  The Court also found that the complaint – which contained scienter allegations that were materially similar to GEICO's allegations in the present case – "set forth factual circumstances sufficient to indicate conscious behavior by defendants." Id.

The Court in AIU Insurance Co. then noted the plaintiffs' allegations that they paid the retail defendants "in reliance on the 'facially valid' documents" submitted by them.  Id.  In support of their claim that they justifiably relied, the AIU Insurance Co. plaintiffs referred to claim documents representing that the costs the retail defendants purported to incur were legitimate, their statutory and contractual obligation to promptly and fairly process claims within 30 days, and the defendants' retention of two law firms that submitted cover letters indicating that they were "hired to collect payment for Retail Defendants[,]" which carried an "implicit threat of litigation if the plaintiffs were to fail to promptly pay Retail Defendants' charges in full." Id. at *14.  GEICO has made substantially similar allegations in this case, in that GEICO relied upon the face of the documents submitted by the Defendants.  See Docket No.1 at ¶¶164-172.

13

Given the facts set forth in GEICO's Complaint, coupled with the PC Defendants and Dr. Gateva's admission to those facts as a result of their default, the allegations in this Complaint against the PC Defendants and Dr. Gateva, as in AIU Insurance Co., set forth all the elements to support Plaintiffs' common law fraud claims. These are more particularly set forth below.

First, GEICO's Complaint sets forth the actual misrepresentations contained in the billing and supporting documents submitted by the PC Defendants and Dr. Gateva, as well the material omission of facts. For example, the Complaint annexes detailed charts (Exhibits "1-3" thereto) that chronicles tens of thousands of individual fraudulent claims wherein the PC Defendants and Dr. Gateva concealed the fact that: (i) the PC Defendants are fraudulently incorporated and actually owned and controlled by non-physicians; (ii) the PC Defendants engage in illegal fee-splitting with non-physicians; (iii) the billed-for services are not medically necessary, inflated, performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals and entities that own and control the PC Defendants; and (iv) the services that allegedly were performed, are provided by independent contractors and not employees of the PC Defendants. See Docket No.1 at ¶¶162-163.

These categories of misrepresentations clearly establish fraud by the PC Defendants and Dr. Gateva. See AIU Insurance Co., supra; see also, e.g., Universal Acupuncture, 196 F. Supp. 2d at 378, 388 (fraud claim recognized where a professional corporation falsified records to indicate that it provided medically necessary treatment); Oxford Health Plans (NY) Inc. v. Bettercare Health Care Pain Management & Rehab PC, 305 A.D.2d 223, 224 (1st Dept 2003)(claims of fraud properly premised on misrepresentations as to the necessity of the services and the actual performance of the services); Allstate Ins. Co. v. Ahmed Halima, 2009 U.S. Dist. LEXIS 22443 at *23 (E.D.N.Y. 2009)(facts indicating submission of boilerplate letters of medical necessity, i.e., undated, unsigned

or signed with irregular signatures and containing identical language, along with doctor's report and bills for performance and interpretation of medically unnecessary CPT and J-Tech tests sufficient to state fraud and unjust enrichment claims); State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C., 2008 U.S. Dist. LEXIS 71156 at *52 (E.D.N.Y. 2008)(same re: CPT tests); State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C., 589 F. Supp. 2d 221, 235-237 (E.D.N.Y. 2008)(fraud claim sufficient where billing misrepresented level of service to inflate charges, "unbundled" charges to charge beyond maximum amount, and misrepresented medical necessity for tests).

Second, GEICO's Complaint establishes scienter. While "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally" (Fed. R. Civ. Pro. 9(b)), plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006)(quoting Acito v. IMCERA Group, Inc., 47 F.3d 47, 52 (2d Cir. 1995)(internal quotation marks and citation omitted in original)). Further, "'[t]he requisite "strong inference" of fraud may be established either: (i) by alleging facts to show that defendants had both motive and opportunity to commit fraud; or (ii) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290-291(citation omitted); see also State Farm Mut. Auto. Ins. Co. v. Grafman, 655 F. Supp. 2d 212, 227 (E.D.N.Y. 2010).

Although GEICO need only plead facts showing that the PC Defendants and Dr. Gateva either had both the motive and opportunity to commit fraud or facts demonstrating strong circumstantial evidence of conscious misbehavior or recklessness, the Complaint pleads facts establishing scienter through either standard. In fact, Grafman is a factually similar case, in which the Court found a "strong inference of fraudulent intent" (as to the mail fraud allegations in the RICO claim) in almost the same circumstances. Id., 655 F. Supp. 2d at 228. In particular, Grafman held

that plaintiffs' allegations in the complaint that the retail defendants "repeatedly sought reimbursement for medical treatment, tests and durable medical equipment at artificially high prices or for equipment or tests that were not medically necessary or, in some cases, never performed at all, shows intentional misbehavior." Id.

Here, motive and the opportunity to commit fraud is demonstrated by the fact that PC Defendants and Dr. Gateva, in cooperation with the Management Defendants, not only had "likely prospect of achieving concrete benefits" by their scheme, but through a carefully constructed, sophisticated fraudulent scheme, actually did realize "concrete benefits" – recovering more than $1,070,392.45 from GEICO. (See Fogarty Decl. at ¶6, Exhibit "1").

In addition, the facts demonstrate strong circumstantial evidence of conscious misbehavior or recklessness. The Complaint and exhibits annexed thereto, for instance, outline a scheme in which PC Defendants and Dr. Gateva misrepresented, among other things that: (i) in every claim, the representation that the PC Defendants are properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 NYCRR § 65-3.16(a)(12), when in fact they are fraudulently incorporated and actually owned and controlled by non-physicians; (ii) in every claim, the representation that the PC Defendants are properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 NYCRR § 65-3.16(a)(12), when in fact the professional corporation engages in illegal fee-splitting with non-physicians; (iii) in every claim, the representation that the billed-for services were medically necessary, and properly billed, when in fact the billed-for services were not medically necessary, were inflated, were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals and entities that own and control the PC Defendants in contravention of New York law, and in many

16

cases were not performed at all and (iv) in certain claims, the representation that the PC

Defendants are eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and

11 N.Y.C.R.R. § 65-3.11(a) for the services that allegedly were performed, when in fact it was

not eligible to seek or pursue collection of No-Fault Benefits associated with the services

because the services were not provided by PC Defendants' employees.   Additionally, despite

GEICO's repeated requests for additional verification, the PC Defendants and Dr. Gateva never

provided any form of verification of the claims.  In the meantime, the PC Defendants and Dr. Gateva

continued to submit claims that had to be paid or denied within 30 days and filed hundreds of

lawsuits seeking reimbursement on the fraudulent claims.  Thus, GEICO's payment and resulting

damages were reasonably foreseeable.  See Docket No. 1 at ¶¶162-163.  These circumstances, at a

minimum, indicate conscious behavior evincing the intent to defraud GEICO.  See Grafman, supra;

see also  Government Employees Insurance Company, et al.  v. Hollis Med. Care, P.C., 2011

U.S. Dist. LEXIS 130721 at fn. 11 (E.D.N.Y. 2011)(scienter sufficiently pleaded where defendants

used professional corporation as a vehicle to submit fraudulent claims and managed the professional

corporation so as to maximize the number of fraudulent claims that could be submitted); Allstate

Insurance. Co. v. Etienne, 2010 U.S. Dist. LEXIS 113995 at * 30 (E.D.N.Y. 2010)(scienter pleaded

where the medical provider defendants knowingly conducted and/or participated, directly or

indirectly, in the conduct of the of the fraudulent enterprise, where the defendants benefitted from

each other's participation in the scheme and where the defendants caused fraudulent bills to be

submitted to Allstate).

Third, the allegations in the Complaint more than sufficiently allege that GEICO justifiably

and reasonably relied on the claim documents submitted by the PC Defendants and Dr. Gateva.  A

plaintiff satisfies the justifiable reliance element sufficient to state a fraud claim so long as its reliance

was not so "utterly unreasonable, in light of the information open to [it], that the law may properly say that [its] loss is [its] own responsibility." Transamerica Ins. Finance Corp. v. Fireman's Fund Ins. Co., 1992 U.S. Dist. LEXIS 17633 at * 23 (S.D.N.Y. 1992). In addition, because the representations and/or omissions are matters that were within the exclusive knowledge of the PC Defendants and Dr. Gateva, it cannot challenge the reasonableness of GEICO's reliance. See Lazard Freres & Company v. Protective Life Insurance Company, 108 F.3d 1531, 1542 (2d Cir. 1997)(interpreting New York Law and citing Mallis v. Bankers Trust Company, 615 F.2d 68, 80 (2d Cir. 1980)(when matters are within the exclusive knowledge of the defendants, the plaintiff may rely on the representations "without prosecuting an investigation" to ascertain the truth) See also Tahini Investments, Ltd. v. Bobrowsky, 99 A.D.2d 489, 470 N.Y.S.2d 431 (2d Dep't 1984); Steinhardt Group, Inc. v. Citicorp, 272 A.D.2d 255, 257, 708 N.Y.S.2d 91, 93 (1st Dep't 2000); MBIA Ins. Corp. v. Royal Bank of Canada, 2010 NY Slip Op 51490U at *39-40 (Sup Ct. Westchester Co. 2010).

The Complaint here describes how GEICO justifiably and reasonable relied on the charges contained in the PC Defendants' bills which represented that they were legitimate, non-fraudulent charges. See Docket No. 1 at ¶¶164-172. Indeed, pursuant to Section 403 of the New York State Insurance Law, all claim forms are required to contain a notice that provides, "in substance", the following warning:

> Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime … .

Id. Thus, the PC Defendants and Dr. Gateva knew that every claim form they signed and submitted, in essence, verified that the information they provided was truthful and that the submission of any materially false information or concealment was a crime.

The Complaint not only pleads actual reliance, it also pleads the factual basis for GEICO's reliance, thereby explaining why it was justifiable. Specifically, facts demonstrating – among other things – that: (i) the claims were falsely verified; (ii) the Defaulting Defendants acted to conceal their fraud; and (iii) GEICO was under statutory and contractual obligations to process the PC Defendants' claims within 30 days, which forced GEICO to rely on the Defendants' facially-valid submissions.

Courts have regularly found that insurers may justifiably rely on claims forms submitted in support of reimbursement under New York no-fault laws. See, e.g., Halima, supra, 2009 U.S. Dist. LEXIS 22443 at *15-16. In Halima, for instance, this Court found that plaintiffs sufficiently pleaded justifiable reliance where defendants fraudulently submitted "thousands of insurance claims" resulting in plaintiffs' payment of over $1,000,000.00 in unnecessary reimbursements. Id. at *15. The district court found that plaintiffs sufficiently pleaded that they could not detect the defendants' fraud because the physicians and licensed medical services corporations submitted facially valid insurance claims upon which plaintiffs reasonably relied. Id. See also Damien, supra at * 9 - * 13 (granting default judgment to insurers alleging fraudulent no-fault billing scheme, and noting that the insurers established "reasonable reliance by including in their complaint an explanation of the statutory and contractual requirements obligating [them] to respond promptly to facially valid claims submitted under the statutory scheme"); Liguori, supra, 589 F. Supp. 2d at 227, 238 (State Farm's allegations that it "was under statutory and contractual obligations to promptly and fairly process claims within 30 days, and therefore relied on [alleged misrepresentations within defendants' no-fault billing] and the facially valid documents defendants submitted in support of the charges" were sufficient to plead reliance); CPT Med. Servs., supra, 2008 U.S. Dist. LEXIS 71156 at *43 52 (E.D.N.Y. 2008)(same); St. Paul Travelers Ins. Co. v. Nandi, 2007 WL 1662050 at *6 (Sup. Ct. Queens Co. 2007) (allegations that plaintiffs paid money to ineligible professional corporations in

reliance on the representation that the PCs were valid and entitled to receive no-fault benefits sufficiently stated reliance).

Accordingly, in the present case Dr. Gateva herself verified that the charges submitted by her and the PC Defendants were medically necessary, legitimate and that the services were provided through properly incorporated non-fraudulent PCs, and GEICO justifiably relied on the fraudulent misrepresentations contained in the facially-valid claim forms. Beyond this, as noted above, GEICO's reliance was all the more reasonable because the PC Defendants and Dr. Gateva took steps to conceal their fraud – for example, by submitting billing through 3 separate PCs, by refusing to provide verification and by signing each and every bill indicating the charges were facially valid. See Docket No 1. at ¶164-172.

Finally, GEICO has established the requisite injury. The Complaint alleges that GEICO was injured as a result of the fraudulent scheme perpetrated by the PC Defendants and Dr. Gateva in that it paid more than $1,070,392.45 to the PC Defendants and Dr. Gateva, reasonably believing that it had an obligation to do so. See Fogarty Decl. at ¶6 and Exhibit "1" annexed thereto (setting forth the actual amounts GEICO paid to the PC Defendants that it seeks to recover in this action). Damien, supra at * 11 (insurers sufficiently pleaded damages to support default judgment on fraud claims by "alleging a total amount of benefits paid out to the fraudulent entities, as well as attaching to their complaint lists of many of the claims paid out.")

### C.   GEICO Should Be Granted Default Judgment On Its Unjust Enrichment Claim Against the PC Defendants and Dr. Gateva

GEICO's Complaint also establishes its entitlement to recover the money paid to the PC Defendants and Dr. Gateva based on a claim for unjust enrichment. Recovery for unjust enrichment requires allegations establishing that: (i) the PC Defendants and Dr. Gateva were enriched; (ii) at GEICO's expense; and (iii) that equity and good conscience require restitution. See Kaye v.

Grossman, 202 F.3d 611, 616 (2d Cir. 2000); Golden Pacific Bancorp v. F.D.I.C., 273 F.3d 509, 519

(2d Cir. 2001); see also Carriafielio-Diehl & Associates, Inc. v. D & M Elec. Contracting, Inc., 12

A.D.3d 478, 784 N.Y.S.2d 617, 618 (2d Dept. 2004).   Given the allegations detailing the massive

fraudulent scheme committed by the PC Defendants and Dr. Gateva against GEICO resulting in the

payment of more than $1,070,392.45 to the PC Defendants and Dr. Gateva, GEICO has more than

sufficiently established a claim for unjust enrichment. See, Fogarty Declaration at ¶6 and Exhibit

"1".

### D.   GEICO Should Be Granted Default Judgment on its Substantive RICO Causes of Action against Dr. Gateva

To state a legally-sufficient RICO claim, a plaintiff must establish that:  (i) the defendant; (ii)

through the commission of two or more predicate acts; (iii) constituting a pattern; (iv) of racketeering

activity; (v) directly or indirectly participates; (vi) in an enterprise; (vii) the activities of which affect

interstate commerce. See CPT Med. Servs., P.C., 2008 U.S. Dist. LEXIS 71156, at *33.   Given

the benefit of all legitimate inferences that can be drawn from the facts alleged in the Complaint,

GEICO meets these requirements and has shown that Grinberg violated the civil RICO statute.

#### 1.   The Enterprise

The RICO statute defines an "enterprise" as "any individual, partnership, corporation,

association, or other legal entity, and any union or group of individuals associated in fact although

not a legal entity." See 18 U.S.C. § 1961(4). In the present case, GEICO has alleged that the PC

Defendants – three professional corporations – constitute RICO enterprises. See Docket No. 1, ¶¶

193, 207, 221. This is sufficient. See, e.g., Lyons, 843 F. Supp. 2d at 367-369.

#### 2.   Racketeering Activities

Pursuant to U.S.C. § 1961(1)(B), "racketeering activity" is comprised of specific enumerated

crimes, including mail fraud. See 18 U.S.C. § 1961(1)(B). Under the statute, a complaint must plead

at least two predicate acts of "racketeering activity." See, Allstate Ins. Co. v. Valley Physical Medicine & Rehabilitation, P.C., 2009 U.S. Dist. LEXIS 91291 at * 16 – 20 (E.D.N.Y. 2009). The predicate acts alleged in the Complaint consist of numerous violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the mails to submit fraudulent billing to GEICO. See Grafman, 2009 U.S. Dist. LEXIS 86451 at *38 - * 39 (mail fraud requires that the pleading allege that defendants engaged in: (i) a scheme to defraud; (ii) to get money or property; (iii) furthered by the use of the mails). The master claim/billing charts attached to the Complaint as Exhibits "1", "2" and "3", coupled with the specific references within the Complaint demonstrating the pervasive nature of the fraudulent billing practices, as participated in, by Dr. Gateva, which involved the use of the United States mail system, sufficiently allege the requisite predicate acts and provide Dr. Gateva with specific notice of her role in the fraud and specific fraudulent activity attributable to her, including the dates on which the fraudulent billing was mailed to GEICO. See Hollis Med. Care, P.C., supra at 25; Liguori, supra, 589 F. Supp.2d 237; CPT Med. Services, supra, 2008 U.S. Dist. LEXIS 71156 at * 39 – 40 (all finding predicate acts to be sufficiently pleaded under analogous circumstances).

### 3. The Participation

In the RICO context, "participation" means "participation in the operation or management of the enterprise." De Falco v. Bernas, 244 F.3d 286, 309 (2d Cir. 2001). Under the "operation or management" test, to participate, directly or indirectly, in the conduct of an enterprise's affairs, "one must have some part in directing those affairs." Id. RICO liability is not limited to those with primary responsibility, nor to those with a formal position in the enterprise, but only requires some part in directing the enterprise's affairs. Id.

In this context, Dr. Gateva clearly "participated" in the alleged enterprises in a manner sufficient to support RICO liability. As the Complaint alleges, Dr. Gateva allowed her license to be

used by the Management Defendants, who masterminded and implemented a massive fraudulent scheme through which each her PC Defendants was used to submit large-scale, fraudulent billing to GEICO and other insurers. Additionally, Dr. Gateva knowingly signed off on each and every bill submitted to GEICO for the fraudulent services. See Docket No. 1 at ¶¶ 28-161. These "participation" allegations are sufficient to plead civil RICO claims against Dr. Gateva. See Halima, 2009 U.S. Dist. LEXIS 22443, at *18-*20; CPT Med. Servs., P.C., 2008 U.S. Dist. LEXIS 71156, at *36-*38.

### 4.  The Pattern

RICO provides that a "pattern of racketeering activity" must consist of "at least two acts of racketeering activity" undertaken within 10 years. See 18 U.S.C. § 1961(5). To establish a "pattern" sufficient to satisfy the statute, a complaint must allege facts tending to show that "the predicate acts of racketeering activity by a defendant are related, and that they amount to or pose a threat of continued criminal activity." See Valley, 2009 U.S. Dist. LEXIS 91291, at *22 (quotation omitted). The continuity necessary to prove a RICO pattern can be alleged either as closed-ended continuity or open-ended continuity. See id.

To establish closed-ended continuity, a plaintiff must establish a series of related predicate acts extending over a substantial period of time. See Beauford v. Helmsley, 865 F.2d 1386, 1391 (2d Cir. 1989) ("What is required is that the complaint plead a basis from which it could be inferred that the acts of racketeering activity were neither isolated nor sporadic."). While what constitutes a "substantial period of time" necessary to demonstrate a closed-ended pattern of racketeering activity is not subject to a bright-line rule, the Second Circuit has indicated that it is disinclined to find closed-ended continuity where the predicate acts occurred over less than two years' time. See Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 184 (2d Cir. 2008).

23

In the present case, GEICO has alleged that Dr. Gateva along with the Management Defendants caused to be submitted thousands of fraudulent bills by mail through the PC Defendants over the course of more than five (5) years. See Docket No. 1 at ¶¶28-161 .  Furthermore, GEICO has specified, in the charts annexed as Exhibits "1-3" to the Complaint, a very large sample of the fraudulent bills submitted by Dr. Gateva through the PC Defendants.  This is sufficient to plead closed-ended continuity. See, e.g., Damien, 2011 U.S. Dist. LEXIS 138365, at *18 (finding that plaintiff insurer established closed-ended RICO pattern on default judgment motion by alleging a "vast number of similar fraudulent claims" submitted over a three-year period); Liberty Mut. Ins. Co. v. Blessinger, No. 06-cv-391(NGG)(ARL), 2007 U.S. Dist. LEXIS 21781, at *7-*8 (E.D.N.Y. Mar. 27, 2007) (finding almost three years of racketeering activity sufficient to satisfy closed ended continuity, "especially in light of the volume of predicate acts alleged to have taken place during that time period"); Kalika, 2006 U.S. Dist. LEXIS 97454, at *46-*47 (finding that 1,256 fraudulent claims submitted over a four-year period satisfied continuity requirement).

To establish open-ended continuity, a plaintiff need not show that the predicate acts extended over a substantial period of time, but rather "must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." De Falco v. Bernas, 244 F.3d 286, 323 (2d Cir. 2001); see also SKS Constructors, Inc. v. Drinkwine, 458 F. Supp. 2d 68, 78 (E.D.N.Y. 2006)(same). "The key considerations to the question of open ended continuity are the nature of the enterprise and the predicate acts alleged. … If the enterprise alleged is engaged in 'inherently unlawful' acts, there is a threat of continuing criminal activity and open ended continuity exists." Id. (Internal citation omitted).

"On the other hand, if the enterprise is engaged in a legitimate business, an allegation of open ended continuity requires evidence supporting an inference that the predicate acts are the regular way

of doing business, or that the nature of the predicate acts themselves implies a threat of continuing criminal activity." SKS Constructors, Inc., supra; see also G-I Holdings v. Baron & Budd, 238 F. Supp. 2d 521, 544 (S.D.N.Y. 2002)(same). "A threat of continuity may be established where the predicate acts are inherently unlawful and were made in pursuit of inherently unlawful goals even if … the period spanned by the racketeering acts was short. … Essentially, if the nature of the acts indicate that the defendants had a continuing intent and ability to carry on the racketeering activity, a threat of continuity is established." Metro. Transp. Auth. v. Contini, 2005 WL 1565524  at * 4 (E.D.N.Y. 2005).

By these standards, GEICO sufficiently has pleaded open-ended continuity with respect to the Hollis enterprise, the Park Avenue enterprise and the Gentle Care enterprise. First, the Complaint alleges that the PC Defendants enterprises engaged in inherently unlawful acts – to wit, that they continue to submit and attempt collection on fraudulent claims from GEICO and other New York automobile insurers. See Docket No. 1, passim, Fogarty Decl. at ¶8 and Exhibit "2".  In addition, GEICO has alleged that these inherently unlawful acts were taken in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through the submission of fraudulent no-fault charges. Id. See, e.g., Metro. Transp. Auth., supra at * 4 (open-ended continuity found where embezzlement, an act considered inherently unlawful, was committed in pursuit of an inherently unlawful goal, namely the theft of money from the MTA).

Second, even assuming that the PC Defendants -- which exist for the purpose of submitting fraudulent no-fault claims – could be considered "legitimate businesses", GEICO has alleged that the predicate acts of mail fraud are the regular way that Dr. Gateva operated the PC Defendants.

Specifically, the Complaint alleges that "[t]he predicate acts of mail fraud are the regular way in which Dr. Gateva operates [the PC Defendants], insofar as [the PC Defendants are] not engaged in

25

a legitimate practice, and acts of mail fraud therefore are essential in order for [the PC Defendants] to function." See Docket No. 1, ¶¶ 196, 210, 224. Moreover, these allegations are not made in a vacuum – rather, they are the culmination of a series of allegations that specify why the PC Defendants never have been eligible to bill for or to collect no-fault benefits (see id. at ¶¶ 26-161), and which specify how Dr. Gateva participated in a pattern of using the PC Defendants as vehicles to submit fraudulent no-fault claims while simultaneously attempting to conceal the fact of their ineligibility. See id. Simply put, GEICO has satisfied the open-ended continuity requirement because its factual allegations establish that predicate acts of mail fraud are the regular way in which Dr. Gateva operated the PC Defendants. See, e.g., Lyons, 843 F. Supp. 2d at 370 (open-ended pattern sufficiently pleaded where enterprise's "reason for being" was to facilitate the submission of fraudulent no-fault claims).

Third, GEICO has alleged that "the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity." See Docket No. 1, ¶¶ 196, 210, 224. Again, these allegations are not made in a vacuum. Rather, they are the culmination of a series of allegations recounting how Dr. Gateva used the PC Defendants to submit large-scale fraudulent billing to GEICO and other insurers, while at the same time taking considerable steps to conceal the fact that the billing submitted through the PC Defendants was illegitimate. See id. at ¶¶ 26-161.

Accordingly, GEICO's substantive civil RICO claims against Dr. Gateva are legally sufficient and default judgment should issue against Dr. Gateva on these claims.

### E.    GEICO Should Be Granted Default Judgment on its RICO Conspiracy Causes of Action against Dr. Gateva

The Second Circuit recently summarized the requirements of a RICO conspiracy as follows:

> To establish a RICO conspiracy, the government must prove that a defendant agreed to participate in the affairs of the enterprise through a pattern of

racketeering activity. However, in <u>Salinas v. United States</u>, 522 U.S. 52, 118 S. Ct. 469, 139 L. Ed. 2d 352 (1997), the Supreme Court made clear that to establish this pattern, the government need not prove that the defendant himself agreed that he would commit two or more predicate acts. Indeed, <u>Salinas</u> held that to be found guilty of RICO conspiracy, a defendant need only know of, and agree to, the general criminal objective of a jointly undertaken scheme.

It is well-settled that a conspirator need not be fully informed about his co-conspirators' specific criminal acts provided that he agreed to participate in the broader criminal conspiracy and the acts evincing participation were not outside of the scope of the illegal agreement. A conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense. The partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of each other.

<u>United States v. Yanotti</u>, 541 F.3d 112, 121-22 (2d Cir. 2008) (internal quotations and citations omitted).

Measured against the above standard, GEICO's RICO conspiracy claims against Dr. Gateva are legally sufficient. <u>See</u> <u>Hollis Med. Care, P.C.</u>, 2011 U.S. Dist. LEXIS 130721, at *31-*32; <u>Valley</u>, 2009 U.S. Dist. LEXIS 91291, at *20-*22; <u>CPT Med. Servs., P.C.</u>, 2008 U.S. Dist. LEXIS 71156, at *47. GEICO not only has alleged that Dr. Gateva agreed to participate in the scheme, but that she had knowledge – as the nominal owner of the PC Defendants and a key participant in it – of each of her co-conspirator's roles in committing numerous predicate acts of mail fraud. <u>See</u> Docket No.1 at ¶¶ 28-161.

## F.     GEICO is Entitled to Treble Damages on its RICO Claims

Under the civil RICO statute, GEICO is entitled to recover treble damages. <u>See</u> 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter [18 USCS § 1962] may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains . . . ."). Accordingly GEICO should be awarded judgment in the amount of at least $3,211,186.35 on its RICO claims, representing three times the actual amounts paid on the billing that was caused to be submitted by Dr. Gateva through

the PC Defendants to GEICO. See Fogarty Decl. at ¶6, Exhibit "1"; see also Damien, 2011 U.S. Dist. LEXIS 138365, at *25-*26 (awarding treble damages on default judgment of a RICO claim); D'Orange v. Feely, 894 F. Supp. 159, 163 (S.D.N.Y. 1995) (same).

### G. GEICO is Entitled to Pre-Judgment Interest on its Fraud Claims

GEICO is entitled to pre-judgment interest against the PC Defendants and Dr. Gateva on its fraud claims. See Tosto v. Zelaya, 2003 U.S. Dist. LEXIS 8085, at *23-*24 (S.D.N.Y. May 12, 2003). Indeed, under New York law, an award of pre-judgment interest on damages for fraud is mandatory. See Manufacturers Hanover Trust Co. v. Drysdale Sec. Corp., 801 F.2d 13, 28 (2d Cir.1986).

The award of prejudgment interest is a substantive issue, governed here by the state substantive law of the forum state in which the federal court sits, namely New York law. See Terwilliger v. Terwilliger, 206 F.3d 240, 249 (2nd Cir. 2000)(applying state law to the question of prejudgment interest in a diversity case); Schwimmer v. Allstate Ins. Co., 176 F.3d 648, 650 (2d Cir. 1999) (same). The source of the right to pre-judgment interest in New York is set forth in N.Y. C.P.L.R. § 5001. Specifically, C.P.L.R. § 5001(b) states that "[i]nterest shall be computed from the earliest ascertainable date the cause of action existed". Furthermore, pre-judgment interest is calculated at the non-compounded rate of nine percent per annum. N.Y. C.P.L.R. §§ 5001(a), 5004; see 520 E. 81st St. Assocs. v. New York, 19 A.D.3d 24, 799 N.Y.S.2d 1, 4 (1st Dept. 2005)(as a general rule, statutory pre-judgment interest rate is not compounded). Here, it is suggested that interest be calculated from the first day following the year in which the payments were made on the fraudulent claims by GEICO to the Defendants. St. Paul Fire & Marine Ins. Co. v. Fox Insulation Co., 1999 WL 782333 at *1 (W.D.N.Y. September 30, 1999); American Home Assurance Co. v. Morris Industrial Builders, Inc., 192 A.D.2d 477, 597 N.Y.S.2d 27, 28 (2d Dept. 1993)(applying pre-judgment interest according to dates when payments made by insurer to its insured). This method is

consistent with the purpose of pre-judgment interest, which is to "compensate plaintiffs for the use of funds that were wrongfully diverted by the defendant." Lewis v. S.L. & E., Inc., 831 F.2d 40 (2d Cir. N.Y. 1987). The basis for GEICO's proposed pre-judgment interest calculation under this method (a method more conservative than that permitted under the CPLR) totals $273,586.69, and is described in Exhibit "D" attached to the Goldberg Declaration.

### H.   Joint and Several Liability Should Be Imposed

The Complaint in this case alleges significant facts establishing that the Defaulting Defendants acted jointly and/or concurrently to produce a single injury, and as a result, should be held jointly and severally liable for GEICO's damages based on its common law fraud claims, aiding and abetting fraud claims and unjust enrichment claims. See County of Suffolk v. Amerada Hess Corp., 447 F. Supp. 2d 289, 297 (S.D.N.Y. 2006); Ravo v. Rogatnick, 70 N.Y.2d 305, 520 N.Y.S.2d 533, 514 N.E.2d 1104 (1987). The injury that GEICO suffered as a result of the scheme perpetrated by the PC Defendants, Dr. Gateva and the Management Defendants, is indivisible and was caused by the coordinated activity of each of the Defaulting Defendants. This should render them collectively liable for GEICO's damages which are in excess of $1,070,392.45 (See, Fogarty Decl. at ¶6, Exhibit "1" annexed thereto).


### CONCLUSION

For the reasons stated herein, GEICO's application for default judgments against the Defaulting Defendants should be granted as to its claims for a declaratory judgment, common law fraud and unjust enrichment. Additionally, default judgments should be entered against Dr. Gateva as to GEICO's claims for violations of the RICO statute.

Dated:  Uniondale, New York
        March 25, 2013

                                        Respectfully submitted,

                                        RIVKIN RADLER LLP

                                By:_____
                                        Barry I. Levy, Esq.
                                        Michael A. Sirignano, Esq.
                                        Ryan Goldberg , Esq.
                                        926 RXR Plaza
                                        Uniondale, NY 11556-0926
                                        Tel.: (516) 357-3000
                                        Fax: (516) 357-3333

                                        *Counsel for Plaintiffs, Government Employees
                                        Insurance Co., GEICO Indemnity Co, GEICO
                                        General Insurance Company and GEICO
                                        Casualty Co.*