UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
GOVERNMENT EMPLOYEES INSURANCE CO., et al.,

                                        Plaintiffs,

        -against-                                               Docket No.: CV 11-02863
                                                                        (RRM)(JO)

VILLAGE MEDICAL SUPPLY, INC., et al.,

                                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS VILLAGE MEDICAL SUPPLY, INC., ALBERT BABADZHANOV, GRIGOL SUPPLY, INC. and GRIGOL APRESYANTSI


**RIVKIN RADLER LLP**
Barry I. Levy
Michael A. Sirignano
Justin A. Calabrese
926 RXR Plaza
Uniondale, New York 11556-0926
RR File: 5100-26
Telephone:    (516) 357-3000
Facsimile:    (516) 357-3333

*Counsel for Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................................ii

PRELIMINARY STATEMENT .........................................................................1

RELEVANT FACTS ..........................................................................................2

    I.    Pertinent Procedural History ...............................................................2

    II.   GEICO's Allegations Against the Defaulting Defendants............................2

ARGUMENT......................................................................................................4

    I.    The Standards on This Motion ..............................................................4

    II.   The Facts Set Forth In GEICO's Complaint Establish GEICO's
         Entitlement To Default Judgments Against The Defaulting Defendants...............7

        A.   GEICO Should Be Awarded A Declaratory Judgment Against
            Village ..................................................................................7

        B.   GEICO Should Be Granted Default Judgment On Its Common
            Law Fraud Cause Of Action Against the Retail Defendants.................9

        C.   GEICO Should Be Granted Default Judgment On Its Claims
            Against the Wholesale Defendants For Aiding And Abetting Fraud........16

        D.   GEICO Should Be Granted Judgment On Its Unjust Enrichment
            Claim Against the Retail Defendants .......................................16

        E.   GEICO is Entitled to Pre-Judgment Interest on its Fraud Claims.............17

    III.  Joint and Several Liability Should Be Imposed ..................................18

CONCLUSION ..................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Acito v. IMCERA Group, Inc.,
    47 F.3d 47 (2d Cir. 1995) ................................................................................. 12

Action S.A. v. Marc Rich & Co.,
    951 F.2d 504 (2d Cir. 1991) ................................................................................ 6

Agamede Ltd. v. Life Energy & Tech. Holdings, Inc.,
    2007 U.S. Dist. LEXIS 4698 (E.D.N.Y. 2007) .................................................. 5

AIU Insurance Co. v. Olmecs Med. Supply, Inc.,
    2005 U.S. Dist. LEXIS 29666 (E.D.N.Y. February 22, 2005) ................... 9, 10, 11, 12

Allstate Ins. Co. v. Ahmed Halima,
    2009 U.S. Dist. LEXIS 22443 (E.D.N.Y. February 22, 2009) ................... 12, 15

American Home Assurance Co. v. Morris Industrial Builders, Inc.,
    192 A.D.2d 477, 597 N.Y.S.2d 27 (2d Dept. 1993) ......................................... 17

Au Bon Pain Corp. v. Artect, Inc.,
    653 F.2d 61 (2d Cir. 1981) ................................................................................. 5

Bsteem Holding Co. v. Stella,
    1997 U.S. Dist. LEXIS 14010 (S.D.N.Y. 1997) ............................................... 5

by State Farm Mut. Auto. Ins. Co. v. Kalika,
    2007 U.S. Dist. LEXIS 90322 (E.D.N.Y. 2007) ............................................... 8

Cablevision Sys. New York City Corp. v. Abramov,
    980 F. Supp. 107 (E.D.N.Y. 1997) ................................................................... 5

Cardinal Chem. Co. v. Morton Int'l, Inc.,
    508 U.S. 83, 113 S. Ct. 1967, 124 L. Ed. 2d 1 (1993) ...................................... 7

County of Suffolk v. Amerada Hess Corp.,
    447 F. Supp. 2d 289 (S.D.N.Y. 2006) ............................................................... 18

E.R. Squibb & Sons, Inc. v. Lloyd's & Co.,
    241 F.3d 154 (2d Cir. 2001) ............................................................................... 7

Golden Pacific Bancorp v. F.D.I.C.,
    273 F.3d 509 (2d Cir. 2001) ............................................................................... 17

Gov't Emples. Ins. Co. v. Damien,
    2011 U.S. Dist. LEXIS 138365 (E.D.N.Y. 2011) ........................................ 6, 15

Gov't Emples. Ins. Co. v. Hollis Med. Care, P.C.,
   2011 U.S. Dist. LEXIS 130721 ....................................................................14

Government Employees Insurance Company, et al. v. Infinity Health Products, Ltd., et al.
   10-CV-5611 (JG)(JMA) ..............................................................................6

Government Employees Insurance Company, et al. v. Ivy-Med Distributors, Inc., et al.
   10-CV-3037 (SJ)(RER) ..............................................................................6

Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,
   973 F.2d 155, 159 (2d Cir. 1993) ..................................................................5

Kaye v. Grossman,
   202 F.3d 611 (2d Cir.2000)..........................................................................17

Lazard Freres & Company v. Protective Life Insurance Company,
   108 F.3d 1531 (2d Cir. 1997) .......................................................................14

Lerner v. Fleet Bank, N.A.,
   459 F.3d 273 (2d Cir. 2006)...................................................................12, 16

Lewis v. S.L. & E., Inc.,
   831 F.2d 40 (2d Cir. N.Y. 1987) ..................................................................18

Mallis v. Bankers Trust Company,
   615 F.2d 68 (2d Cir. 1980)..........................................................................14

Manufacturers Hanover Trust Co. v. Drysdale Sec. Corp.,
   801 F.2d 13 (2d Cir.1986)...........................................................................17

Maryland Casualty Co. v. Rosen,
   445 F.2d 1012 (2d Cir. 1971) ........................................................................7

Mason Tenders v. Taher Contracting Co., Inc.,
   2005 U.S. Dist. LEXIS 43364 (S.D.N.Y. 2005) ...........................................4

Mazyck v. Long Island R.R.,
   896 F. Supp. 1330 (E.D.N.Y. 1995) .............................................................18

NAP, Inc. v. Shuttletex, Inc.,
   112 F. Supp. 2d 369 (S.D.N.Y. 2000)............................................................7

Olin Corp. v. Consol. Aluminum Corp.,
   5 F.3d 10 (2d Cir. 1993)...............................................................................7

Orion Pictures Corp. v. Showtime Networks, Inc.,
   4 F.3d 1095 (2d Cir. 1993)...........................................................................7

Perfect Dental, PLLC v. Allstate Insurance Company,
   538 F. Supp. 2d 543 (E.D.N.Y. 2007) ...................................................................8

Ravo v. Rogatnick,
   70 N.Y.2d 305, 520 N.Y.S.2d 533, 514 N.E.2d 1104 (1987) ....................................18

Schlaifer Nance & Co. v. Estate of Warhol,
   119 F.3d 91 (2nd Cir. 1997) ................................................................................9

Schwimmer v. Allstate Ins. Co.,
   176 F.3d 648 (2d Cir. 1999) ..............................................................................17

St. Paul Fire & Marine Ins. Co. v. Fox Insulation Co.,
   1999 WL 782333 (W.D.N.Y. September 30, 1999) .................................................17

State Farm Mut. Auto. Ins. Co. v. Cohan,
   2009 U.S. Dist. LEXIS 125653 (E.D.N.Y. 2009) ..............................................5, 8, 9

State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.,
   2008 U.S. Dist. LEXIS 71156 (E.D.N.Y. 2008) ...................................................12

State Farm Mut. Auto. Ins. Co. v. Grafman,
   655 F. Supp. 2d 212 (E.D.N.Y. 2010) ............................................................12, 13

State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C.,
   589 F. Supp. 2d 221 (E.D.N.Y. 2008) .............................................................12, 15

State Farm Mut. Auto. Ins. Co. v. Kalika,
   2006 U.S. Dist. LEXIS 97454 (E.D.N.Y. 2006) .....................................................8

State Farm Mutual Auto Ins. Co. v. Grafman,
   2009 U.S. Dist. LEXIS 86451 (E.D.N.Y. 2009) ............................................8, 13, 14

Terwilliger v. Terwilliger,
   206 F.3d 240 (2nd Cir. 2000) ............................................................................17

Tosto v. Zelaya,
   2003 U.S. Dist. LEXIS 8085 (S.D.N.Y. May 12, 2003)..........................................17

Transamerica Ins. Finance Corp. v. Fireman's Fund Ins. Co.,
   1992 U.S. Dist. LEXIS 17633 (S.D.N.Y. 1992) ....................................................14

Universal Acupuncture Pain Services, P.C. v. State Farm Mutual Automobile Ins. Co.,
   196 F. Supp. 2d 378 (S.D.N.Y. 2002)..................................................................12

**STATUTES**

28 U.S.C. § 2201(a) .................................................................................... 7

N.Y. C.P.L.R. § 5001 ................................................................................. 17

N.Y. C.P.L.R. §§ 5001(a), 5004 ................................................................ 17

N.Y. C.P.L.R. § 5001(b) ............................................................................ 17

Fed. R. Civ. 9(b) ........................................................................................ 12

Fed. R. Civ. P. 55(a) .................................................................................... 1

Fed. R. Civ.P. 55(b)(1)(10) ......................................................................... 4

Fed. R. Civ. P. 55(b)(2) ........................................................................... 1, 4

Fed.R.Civ. P. 55.2(c) ................................................................................... 5

## PRELIMINARY STATEMENT

Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company (collectively, "Plaintiffs" or "GEICO"), respectfully submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. 55(b)(2), for default judgments against defendants Village Medical Supply, Inc. ("Village") and Albert Babadzhanov ("Babadzhanov")(the "Retail Defendants"), as well as Grigol Supply, Inc. ("Grigol") and  Grigol Apresyantsi ("Apresyantsi")(the "Wholesale Defendants").  (The Retail Defendants and the Wholesale Defendants are collectively referred to hereinafter as the "Defaulting Defendants").

The record is clear: each of the Defaulting Defendants was duly served with the Summons and Complaint in this action but has failed to appear.  The Clerk of the Court, in accordance with Fed. R. Civ. P. 55(a), has entered each of the Defaulting Defendants' defaults, and the only individual defendants who are subject to this motion, Babadzhanov and Apresyantsi do not currently serve in the United States military.  As set forth more fully below, given these facts and the facts established by the Defaulting Defendants' respective defaults, GEICO's Complaint sets forth legally sufficient claims against Village for a declaratory judgment, against the Retail Defendants for common law fraud and unjust enrichment and against the Wholesale Defendants for aiding and abetting the Retail Defendants' fraud.

Accordingly, GEICO respectfully requests that default judgments be entered against the Defaulting Defendants as to each of these claims, including damages against the Retail Defendants and Wholesale Defendants plus interest, and costs and disbursements incurred in connection with the prosecution of this action, as well as such other and further relief as to the Court may seem just and proper.

## RELEVANT FACTS

### I.      Pertinent Procedural History

True and correct copies of the Summons and Amended Complaint (the "Complaint") were served on each of the Defaulting Defendants that are subject to this motion and all proofs of service were subsequently filed with the Court via ECF. (See accompanying March 22, 2013 Declaration of Justin A. Calabrese, Esq. ("Calabrese Decl."), Exhibit "B" – Docket Entry Nos. 47, 49, 53 and 55).[1]

Due to the Defaulting Defendants' failure to appear in this action, the Clerk of the Court, on GEICO's motion, entered each of the Defaulting Defendants' default as follows:

- Grigol– August 10, 2012 (see Exhibit "B" – Docket Entry No. 64).
- Babadzhanov – August 10, 2012 (see Exhibit "B" – Docket Entry No. 65).
- Village – August 10, 2012 (see Exhibit "B" – Docket Entry No. 66).
- Apresyantsi – March 11, 2013 (see Exhibit "B" – Docket Entry No. 80).

### II.     GEICO's Allegations Against the Defaulting Defendants

The facts relating to the claims and the damages sought in this action are more fully set forth in the accompanying Calabrese Decl. and Declaration of Jennifer Fogarty ("Fogarty Decl."), together with the exhibits annexed thereto, including the Complaint in this action. GEICO respectfully refers the Court to those materials.

As set forth more fully in the Complaint, the Retail Defendants consist of a corporation (Village) and its owner (Babadzhanov). The Retail Defendants purportedly purchased durable medical equipment ("DME") and orthotic devices from the Wholesale Defendants, among others. As part of a scheme that they orchestrated with the Wholesale Defendants, (hereinafter the "the Scheme"), the Retail Defendants purported to provide the DME and orthotic devices to GEICO

---

[1] Unless otherwise noted, all exhibits referenced herein are annexed to the Calabrese Decl., submitted herewith.

insureds, and then submitted fraudulently-inflated claims to GEICO for reimbursement under New

York's no-fault laws. Briefly:

(i)    The Retail Defendants obtained DME and orthotic devices from the Wholesale Defendants, among others, and, in turn, purported to provide the equipment to GEICO's insureds and submitted no-fault claims to GEICO for reimbursement.

(ii)    Pursuant to New York's no-fault laws, the maximum permissible charge for DME and orthotic devices is the fee payable for such DME and orthotic devices under the New York State Medicaid program at the time such DME and orthotic devices are provided. If the New York State Medicaid program has not established a fee payable for the specific item, then the fee payable shall be the lesser of the acquisition cost (i.e., the line item cost from a manufacturer or wholesaler net of any rebates, discounts or other valuable considerations, mailing, shipping, handling, insurance costs or any sales tax) to the provider plus 50 percent, or the usual and customary price charged to the general public.

(iii)    In order to fraudulently inflate the charges that they could submit to GEICO for reimbursement, the Retail Defendants, among other things, knowingly obtained fraudulent and inflated wholesale invoices from the Wholesale Defendants (who created the inflated wholesale invoices), and used those invoices to falsely represent that the DME and orthotic devices they purported to supply were expensive, high-end items, and that they therefore were entitled to a high level of reimbursement for those items. In fact, when the Retail Defendants did actually dispense DME and orthotic devices, they knowingly dispensed low-end, poor quality DME that sold at much lower amounts than the amounts represented on the wholesale invoices provided by the Wholesale Defendants.

(iv)    As part of their efforts to mislead GEICO, the Retail Defendants issued payments to the Wholesale Defendants for the inflated invoice amounts in the form of checks that they submitted to GEICO as proof of payment and to support their fraudulent claims for reimbursement.  The check payments, however, were merely a façade, because the Wholesale Defendants issued "rebates," i.e., kickbacks, using check cashers and other methods to return a majority of the invoiced amounts to the Retail Defendants.

(v)    Through this method, the Retail Defendants, with the knowing aid and substantial assistance of the Wholesale Defendants, obtained payment from GEICO on their fraudulently inflated claims.

(vi)    The Retail Defendants also furthered the scheme by misrepresenting what they supplied. For example, they submitted bills for expensive "custom-fitted" orthotic devices when what actually was supplied, if anything, were inexpensive "one size fits all" orthotic devices.

(vii)    In addition, the Retail Defendants deliberately omitted any meaningful information regarding the DME and orthotic devices from the billing that they submitted to

GEICO, including the manufacturer, make and model of the DME and orthotic devices that they purported to supply to insureds. This concealed the fact that what Village actually supplied, if anything, was cheap, low quality DME and orthotic devices. By omitting this information, the Retail Defendants concealed that, in virtually every instance, they charged GEICO far more than the maximum permissible amounts for the DME and orthotic devices that were supplied, to the extent that any goods were supplied at all. The Retail Defendants also often failed to provide GEICO and/or refused to respond to repeated requests made by GEICO seeking information such as the wholesale invoices, descriptions of goods provided (i.e., make and model), proof of payment, and additional information that would be necessary to determine whether the charges submitted through Village was legitimate.

(viii)  Beyond this, the Retail Defendants hired law firms that would routinely file expensive and time-consuming litigation against GEICO if the fraudulent charges were not promptly paid in full. The material misrepresentations, omissions and active concealment, along with the threat of litigation (against the backdrop of GEICO's statutory and contractual obligation to promptly and fairly process no-fault claims within 30 days), were designed to cause and did cause GEICO to justifiably rely on the fraudulent charges to its detriment. In reliance on the fraudulent charges, GEICO has paid the Retail Defendants more than $26,400.00 – and Village has pending, unpaid bills in excess of $1,247,000.00.

(See Exhibit "A" at ¶¶ 22-43).[2]

## ARGUMENT

### I.   The Standards on This Motion

Rule 55(a) of the Federal Rules of Civil Procedure provides that the Clerk of the Court "must" enter a default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by [the] rules." Id. As discussed above, the Defaulting Defendants' defaults already have been entered in this case.

In the rare case when the complaint seeks a sum certain, the Clerk of the Court may enter a judgment of default pursuant to Rule 55(b)(1)(10). See Moore's Federal Practice § 55.20[4] (Matthew Bender 3d Ed). In all other cases, the party seeking the default judgment must apply to the Court. See Fed. R. Civ. P. 55(b)(2); Mason Tenders v. Taher Contracting Co., Inc., 2005 U.S. Dist.

---

[2]  The Complaint alleges that GEICO's suffered damages exceeding $45,000 however for purposes of this motion, GEICO seeks damages of only $26,400.00 – the amounts voluntarily paid to the Defendants resulting from GEICO's justifiable reliance that the claims submitted by the Retail Defendants were in fact legitimate.

LEXIS 43364 at *2 (S.D.N.Y. 2005).  Since GEICO's damages are not for a liquidated amount, and because GEICO seeks a declaratory judgment in this action, this application is being made to the Court.

Where a defendant has not entered any appearance in an action, a plaintiff seeking a default judgment is not required to provide notice of its application. See Bsteem Holding Co. v. Stella, 1997 U.S. Dist. LEXIS 14010 at * 11 (S.D.N.Y. 1997). Even so, Local Civil Rule 55.2(c) does require that the papers in support of the present motion be mailed to the Defaulting Defendants at their last known addresses. As set forth in the Calabrese Decl., GEICO has complied with Local Civil Rule 55.2(c). See Calabrese Decl. at ¶ 13.

"Once found to be in default, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability and the Court accepts those allegations as true." Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). As such, once a defendant has defaulted, "[a] plaintiff must . . . establish that on the law it is entitled to the relief it seeks, given the facts as established by the default." Agamede Ltd. v. Life Energy & Tech. Holdings, Inc., 2007 U.S. Dist. LEXIS 4698 at * 3 (E.D.N.Y. 2007)(internal quotations and citations omitted).

With respect to damages, State Farm Mut. Auto. Ins. Co. v. Cohan, 2009 U.S. Dist. LEXIS 125653 (E.D.N.Y. 2009) explained: "[A] default 'effectively constitutes an admission that the damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged.'" Id. at *9-10 (quoting Cablevision Sys. New York City Corp. v. Abramov, 980 F. Supp. 107, 111 (E.D.N.Y. 1997)). Cohan continued: "The movant must prove that the 'compensation sought relate[s] to the damages that naturally flow from the injuries pleaded.'" Id. at *10 (quoting Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 159 (2d Cir. 1993)).

While the Court may conduct a hearing under Rule 55(b)(2) of the Federal Rules of Civil Procedure, "[a]n evidentiary hearing is <u>not</u> required so long as there is a basis for the damages awarded[,]" such as "detailed affidavits and other documentary evidence." <u>Id</u>. (citing <u>Transatlantic Marine Claims Agency v. Ace Shipping Corp.</u>, 109 F.3d 105, 111 (2d Cir. 1997) and <u>Action S.A. v. Marc Rich & Co.</u>, 951 F.2d 504, 508 (2d Cir. 1991))(emphasis added). <u>See also Gov't Emples. Ins. Co. v. Damien</u>, 2011 U.S. Dist. LEXIS 138365 at * 22 (E.D.N.Y. 2011) <u>adopted by</u> 2011 U.S. Dist. LEXIS 136661 (E.D.N.Y. 2011)(determining default judgment damages based on plaintiffs' submissions, and noting that "A court must conduct an inquiry to ascertain the amount of damages with reasonable certainty. … The Second Circuit has approved the holding of an inquest by affidavit, without a hearing, as long as the court has ensured that there was a basis for the damages specified in the default judgment.")(Internal quotations and citation omitted).

Below, GEICO sets forth that the facts pleaded are legally sufficient to state the causes of action asserted against the Defaulting Defendants.  Furthermore, there is recent precedent in this Court that addresses almost identical factual schemes as the schemes identified in GEICO's Complaint herein.   <u>See</u>, <u>Government Employees Insurance Company, et al. v. Ivy-Med Distributors, Inc., et al.</u> 10-CV-3037 (SJ)(RER) and <u>Government Employees Insurance Company, et al. v. Infinity Health Products, Ltd., et al.</u> 10-CV-5611 (JG)(JMA).  In both cases, the Court concluded that GEICO's complaints competently alleged and sufficiently established its entitlement to judgment on it claims for fraud and unjust enrichment against the various retail defendants and its aiding and abetting fraud claims against the various wholesale defendants and accordingly entered judgments against them.  As such, judgment should be granted to GEICO against the Defaulting Defendants in this matter.

II.     **The Facts Set Forth In GEICO's Complaint Establish GEICO's Entitlement To Default Judgments Against The Defaulting Defendants**

A.     **GEICO Should Be Awarded A Declaratory Judgment Against Village**

As an initial matter, a party seeking a declaratory judgment from a district court must show the existence of an "actual case or controversy." Cardinal Chem. Co. v. Morton Int'l, Inc., 508 U.S. 83, 95, 113 S. Ct. 1967, 124 L. Ed. 2d 1 (1993); 28 U.S.C. § 2201(a). An "actual controversy" is "real and substantial … admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Olin Corp. v. Consol. Aluminum Corp., 5 F.3d 10, 17 (2d Cir. 1993) (internal citations omitted). Moreover, declaratory relief is appropriate: (i) where the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; or (ii) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings. See Maryland Casualty Co. v. Rosen, 445 F.2d 1012, 1014 (2d Cir. 1971); E.R. Squibb & Sons, Inc. v. Lloyd's & Co., 241 F.3d 154, 175 (2d Cir. 2001).  A court has broad discretion to decide whether to render a declaratory judgment. See Orion Pictures Corp. v. Showtime Networks, Inc., 4 F.3d 1095, 1100 (2d Cir. 1993). In deciding whether a plaintiff has stated a claim for declaratory relief, a federal court applies the state substantive law of the forum in which it sits. See NAP, Inc. v. Shuttletex, Inc., 112 F. Supp. 2d 369, 372 (S.D.N.Y. 2000).

GEICO's Complaint clearly establishes the existence of an actual case in controversy between GEICO and Village regarding more than $1,247,000.00 in fraudulent billing for DME and orthotic devices that allegedly have been provided to GEICO's insureds. Specifically, GEICO's request for declaratory relief is based upon the pervasive, fraudulent scheme whereby Village continues to seek payment for bills containing: (i) false and fraudulent misrepresentations to GEICO concerning the maximum permissible charges for the DME and orthotic devices, in order to obtain

from GEICO payment under the New York no-fault laws to which it is not entitled; (ii) false and fraudulent charges for DME and devices that never were dispensed to insureds; and (iii) material omissions regarding the full particulars of the nature and/or extent of the DME and orthotic devices it purportedly supplied to insureds. (See Exhibit "A"). Because Village has defaulted and is deemed to have admitted these allegations, GEICO is entitled to a declaration that it is not obligated to pay outstanding claims by Village that currently exceed $1,247,000.00. See, Fogarty Decl. at ¶6 – Exhibit "1."

Indeed, this Court has granted declaratory relief in a number of cases where the defendants were involved in similar schemes to defraud insurers by billing for charges that are not permissible under the no-fault laws. See, e.g., Cohan, 2009 U.S. Dist. LEXIS 125653 at *11-12 (granting declaratory relief to insurer relating to unpaid claims by dental professional corporations for services performed by independent contractors because under the no-fault laws, professional corporations have no right to bill for services of independent contractors), and cases cited therein; see also Perfect Dental, PLLC v. Allstate Insurance Company, 538 F. Supp. 2d 543, 549 (E.D.N.Y. 2007)(granting declaratory judgment in favor of insurers relating to unpaid claims by dental professional corporations for services performed by physical therapists who were independent contractors); see also State Farm Mut. Auto. Ins. Co. v. Kalika, 2006 U.S. Dist. LEXIS 97454 at *51-53 (E.D.N.Y. 2006) adopted by State Farm Mut. Auto. Ins. Co. v. Kalika, 2007 U.S. Dist. LEXIS 90322 (E.D.N.Y. 2007)(rejecting defendants' motion to dismiss insurer's claim for declaratory judgment that it was not obligated to pay outstanding claims for, among other things, medically unnecessary durable medical equipment); State Farm Mutual Auto Ins. Co. v. Grafman, 2009 U.S. Dist. LEXIS 86451 at *25-26 (E.D.N.Y. 2009)(rejecting defendants' motion to dismiss insurer's claim for declaratory judgment that it was not obligated to pay outstanding no-fault claims.)

Accordingly, GEICO's Complaint sets forth all of the requisite elements to establish a proper claim for a declaratory judgment in the context of this matter, and the requested declaration should be granted.

**B.      GEICO Should Be Granted Default Judgment On Its Common Law Fraud Cause Of Action Against the Retail Defendants**

A claim for common law fraud in New York requires facts demonstrating: (i) a material misrepresentation or omission of fact; (ii) made with knowledge of its falsity; (iii) with an intent to defraud; and (iv) reasonable reliance on the part of the plaintiff; (v) that causes damage to the plaintiff. See Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 98 (2nd Cir. 1997); see also Cohan, supra at * 12 - * 13.   Given the facts set forth in GEICO's Complaint, and the Retail Defendants' admissions as a result of their default, GEICO's fraud claims are legally sufficient.

AIU Insurance Co. v. Olmecs Med. Supply, Inc., 2005 U.S. Dist. LEXIS 29666 (E.D.N.Y. February 22, 2005), is a similar case that provides a helpful overview for analysis of GEICO's fraud claim in the present case.  In AIU Insurance Co., the Court denied motions to dismiss fraud claims by two medical providers. As in the present case, the plaintiffs in AIU Insurance Co. alleged that retailers of medical supplies and wholesalers of medical supplies engaged in a fraudulent scheme to exploit the reimbursement formulas for durable medical equipment under New York's no-fault laws. As in the present case, the plaintiff insurance companies in AIU Insurance Co. claimed, among other things, that the retail defendants submitted fraudulent claims to them that included material misrepresentations as to the costs allegedly incurred by the retail defendants in purchasing items from their wholesalers. Id. at * 11.  As in the present case, the fraudulent claims in AIU Insurance Co. were supported not only by vague wholesale invoices, but also by misleading generic prescriptions, and incomplete descriptions as to the equipment provided that was "completely meaningless in determining the true kind and quality of any specific item, the medical necessity of that item, or

appropriate charges." Id. at * 11.   Essentially the same modus operandi was employed by the Defaulting Defendants in this case.

In denying the motion to dismiss, the Court in AIU Insurance Co. noted that the plaintiffs included, in support of their RICO claims, a "detailed chart of 480 separate RICO events, including the Retail Defendant who submitted the claim, the claim number, the Supplies billed for, the prices charged, [and] the dates of the submissions," as well as lists noting the claims supported by the "prescriptions written by moving defendants …." Id. at 39-40. GEICO has submitted a similar chart in the present case. See Exhibit "A", at Exhibit "1". The Court in AIU Insurance Co. then referred to the chart in support of its finding that the common law fraud claims were sufficiently pleaded. Id. at * 46. The Court also found that the complaint – which contained scienter allegations that were materially similar to GEICO's allegations in the present case – "set forth factual circumstances sufficient to indicate conscious behavior by defendants." Id.

The Court in AIU Insurance Co. then noted the plaintiffs' allegations that they paid the retail defendants "in reliance on the 'facially valid' documents" submitted by them. Id.  In support of their claim that they justifiably relied, the AIU Insurance Co. plaintiffs referred to claim documents representing that the costs the retail defendants purported to incur were legitimate, their statutory and contractual obligation to promptly and fairly process claims within 30 days, and the defendants' retention of two law firms that submitted cover letters indicating that they were "hired to collect payment for Retail Defendants[,]" which carried an "implicit threat of litigation if the plaintiffs were to fail to promptly pay Retail Defendants' charges in full." Id. at *14.   GEICO has made substantially similar allegations in this case. See Exhibit "A" at ¶¶ 27-48.

Given the facts set forth in GEICO's Complaint, and the Retail Defendants' admission to those facts as a result of their default, the allegations in this Complaint against the Retail Defendants,

as in <u>AIU Insurance Co.</u>, set forth all the elements to support Plaintiffs' common law fraud claim. These are more particularly set forth below.

    <u>First</u>, GEICO's Complaint sets forth the actual misrepresentations contained in the billing and supporting documents submitted by the Retail Defendants, as well as the Retail Defendants' material omission of facts.  For example, the Complaint annexes a detailed chart (Exhibit "1" thereto) that chronicles hundreds of individual claims that were submitted to GEICO and alleges, in <u>every</u> claim, that the Retail Defendants concealed the fact that the goods supplied, if any, were cheap, low-quality goods even though they billed as if they were more expensive goods. The Retail Defendants also concealed the fact that they were rebated a large percentage of money that they represented to have paid for supplies, and concealed the fact that they paid "kickbacks" to no-fault clinics to induce them to write prescriptions: (i) for medically unnecessary supplies; (ii) for DME not covered by the New York State Medicaid Fee Schedule; and (iii) in a generic way that would permit the Retail Defendants to falsely purport to supply more expensive, high-end items.  In cases where the New York State Medicaid program has prescribed a fee payable for a given item or class of item, the Retail Defendants misrepresented the nature of the items actually prescribed and, in addition, misrepresented the item that Village supplied, so as to claim entitlement to a higher fee payable.  In cases where the New York State Medicaid program has <u>not</u> prescribed a fee payable for a given item or class of item, the Retail Defendants deliberately misrepresented that their charges for DME and orthotic devices did not exceed the permissible charge under the applicable regulatory scheme, <u>i.e.</u>, the lesser of its acquisition cost plus 50 percent or the usual and customary price charged to the general public, and misrepresented that the prices on the wholesale invoices were <u>bona fide</u> and that Village actually paid the Wholesale Defendants the amounts set forth on the wholesale invoices.  <u>See</u> Exhibit "A" at ¶¶ 27-43.

These categories of misrepresentations clearly establish fraud by the Retail Defendants. See AIU Insurance Co., supra; see also, e.g., Universal Acupuncture Pain Services, P.C. v. State Farm Mutual Automobile Ins. Co., 196 F. Supp. 2d 378, 388 (S.D.N.Y. 2002)(fraud claim recognized where a professional corporation falsified records to indicate that it provided medically necessary treatment); Allstate Ins. Co. v. Ahmed Halima, 2009 U.S. Dist. LEXIS 22443 at *23 (E.D.N.Y. February 22, 2009)(facts indicating submission of boilerplate letters of medical necessity, i.e., undated, unsigned or signed with irregular signatures and containing identical language, along with doctor's report and bills for performance and interpretation of medically unnecessary CPT and J-Tech tests sufficient to state fraud and unjust enrichment claims); State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C., 2008 U.S. Dist. LEXIS 71156 at *52 (E.D.N.Y. 2008)(same re: CPT tests); State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C., 589 F. Supp. 2d 221, 235-237 (E.D.N.Y. 2008)(fraud claim sufficient where billing misrepresented level of service to inflate charges, "unbundled" charges to charge beyond maximum amount, and misrepresented medical necessity for tests).

Second, GEICO's Complaint establishes scienter.  While "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally" (Fed. R. Civ. Pro. 9(b)), plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006)(quoting Acito v. IMCERA Group, Inc., 47 F.3d 47, 52 (2d Cir. 1995)(internal quotation marks and citation omitted in original)).  Further, "'[t]he requisite "strong inference" of fraud may be established either: (i) by alleging facts to show that defendants had both motive and opportunity to commit fraud; or (ii) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" Lerner, 459 F.3d at 290-291 (citation omitted); see also State Farm Mut. Auto. Ins. Co. v. Grafman, 655 F. Supp. 2d 212, 227 (E.D.N.Y. 2010).

Although GEICO need only plead facts showing that the Retail Defendants either had both the motive and opportunity to commit fraud or facts demonstrating strong circumstantial evidence of conscious misbehavior or recklessness, the Complaint pleads facts establishing scienter through either standard. In fact, Grafman is a factually similar case, in which the Court found a "strong inference of fraudulent intent" (as to the mail fraud allegations in the RICO claim) in almost the same circumstances. Id. at 228. In particular, Grafman held that the plaintiffs' allegations in the complaint that the retail defendants "repeatedly sought reimbursement for medical treatment, tests and durable medical equipment at artificially high prices or for equipment or tests that were not medically necessary or, in some cases, never performed at all, shows intentional misbehavior." Id.

Here, motive and the opportunity to commit fraud is demonstrated by the fact that the Retail Defendants, in cooperation with the Wholesale Defendants, not only had "likely prospect of achieving concrete benefits" by their scheme, but through a carefully constructed, sophisticated fraudulent scheme, actually did realize "concrete benefits" – recovering more than $26,400.00 from GEICO. See, Fogarty Decl. at ¶10 – Exhibit "1."

In addition, the facts demonstrate strong circumstantial evidence of conscious misbehavior or recklessness. The Complaint and exhibits annexed thereto, for instance, outline a scheme in which the Retail Defendants misrepresented, among other things, the goods that they supplied and how much those goods cost them. (See Exhibit "A" at ¶¶ 32-43). Then, they concealed these misrepresentations with vague wholesale invoices that failed to provide identifying information as to the goods supplied (see Exhibit "A" at ¶¶ 32-34), as well as with fraudulently-inflated invoices supplied by the Wholesale Defendants, along with checks indicating that they paid the inflated invoices (see Exhibit "A" at ¶ 32-34). The Retail Defendants deliberately failed, however, to advise GEICO that they received rebates for most of the invoiced amounts, and thus GEICO's payment and

13

resulting damages were reasonably foreseeable. These circumstances, at a minimum, indicate conscious behavior evincing an intent to defraud GEICO. See Grafman, supra; see also Gov't Emples. Ins. Co. v. Hollis Med. Care, P.C., 2011 U.S. Dist. LEXIS 130721 at fn. 11 (E.D.N.Y. 2011)(scienter sufficiently pleaded where defendants used professional corporation as a vehicle to submit fraudulent claims and managed the professional corporation so as to maximize the number of fraudulent claims that could be submitted).

Third, the allegations in the Complaint more than sufficiently allege that GEICO justifiably and reasonably relied on the claim documents submitted by the Retail Defendants. A plaintiff satisfies the justifiable reliance element sufficient to state a fraud claim so long as its reliance was not so "utterly unreasonable, in light of the information open to [it], that the law may properly say that [its] loss is [its] own responsibility." Transamerica Ins. Finance Corp. v. Fireman's Fund Ins. Co., 1992 U.S. Dist. LEXIS 17633 at * 23 (S.D.N.Y. 1992). In addition, because the representations and/or omissions are matters that were within the exclusive knowledge of the Retail Defendants, those Defendants cannot challenge the reasonableness of GEICO's reliance. See Lazard Freres & Company v. Protective Life Insurance Company, 108 F.3d 1531, 1542 (2d Cir. 1997)(interpreting New York Law and citing Mallis v. Bankers Trust Company, 615 F.2d 68, 80 (2d Cir. 1980)(when matters are within the exclusive knowledge of the defendants, the plaintiff may rely on the representations "without prosecuting an investigation" to ascertain the truth).

The Complaint here describes how GEICO justifiably and reasonably relied on wholesale invoices that were submitted by the Retail Defendants to support the fraudulent charges. (See Exhibit "A" at ¶¶ 27-43). Indeed, pursuant to Section 403 of the New York State Insurance Law, all claim forms are required to contain a notice that provides, "in substance", the following warning:

> Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any

14

materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime … .

Id. Thus, the Retail Defendants knew that every claim form they signed and submitted, in essence, verified that the information they provided was truthful and that the submission of any materially false information or concealment was a crime.

Courts have regularly found that insurers may justifiably rely on facially-valid claims forms submitted in support of reimbursement under New York no-fault laws. See, e.g., Halima, supra, 2009 U.S. Dist. LEXIS 22443 at *15-16; see also Damien, supra at * 9 - * 13; Liguori, supra, 589 F. Supp. 2d at 227, 238.

Accordingly, in the present case Babadzhanov verified that the charges submitted by the Village were true, accurate and the result of bona fide, arms length transactions between the Retail Defendants and the Wholesale Defendants, and GEICO justifiably relied on the fraudulent misrepresentations contained in the facially-valid claim forms. Beyond this, as noted above, GEICO's reliance was all the more reasonable because the Retail Defendants took steps to conceal their fraud – for example, by providing vague invoices and submitting fraudulently-inflated invoices along with proof of payment by check but without disclosing the rebates that they received. (Exhibit "A" at ¶¶ 34-43).

Finally, GEICO has established the requisite injury. The Complaint alleges that GEICO was injured as a result of the fraudulent scheme perpetrated by the Retail Defendants and the Wholesale Defendants in that it paid more than $26,400.00 to Village, reasonably believing that it had an obligation to do so. (Exhibit "A" at ¶¶ 73-78; see also Fogarty Decl. at ¶ 6 and Exhibit "1" annexed thereto, setting forth the actual amounts GEICO paid to the Village that it seeks to recover in this action); Damien, supra at * 11 (insurers sufficiently pleaded damages to support default judgment on

15

fraud claims by "alleging a total amount of benefits paid out to the fraudulent entities, as well as attaching to their complaint lists of many of the claims paid out.")

### C.   GEICO Should Be Granted Default Judgment On Its Claims Against the Wholesale Defendants For Aiding And Abetting Fraud

While the Retail Defendants engaged in fraud, the Wholesale Defendants aided and abetted that fraud. A party is liable for aiding and abetting fraud if the following is established: (i) the existence of a fraud; (ii) the defendant's knowledge of the fraud; and (iii) that the defendant provided substantial assistance to advance the fraud's commission. See, e.g., Lerner., 459 F.3d at 273. In the present case, the Wholesale Defendants knowingly created fraudulent wholesale invoices with full knowledge that their invoices ultimately would be submitted by the Retail Defendants to GEICO in support of the fraudulent charges. Furthermore, in order to support the Retail Defendants' fraudulent scheme and to reap the benefits of that scheme themselves, the Wholesale Defendants received grossly inflated check payments from the Retail Defendants for the low-end supplies and converted the check payments into cash. The Wholesale Defendants then returned/rebated the bulk of the cash to the Retail Defendants, keeping a portion for themselves. The payment scheme was an attempt to make it appear as if the Retail Defendants actually paid legitimate prices for the DME and orthotic devices as set forth on the fraudulent wholesale invoices.

In short, the Wholesale Defendants' conduct was critical to the success of the fraudulent scheme because their actions enabled the Retail Defendants to obtain inflated payments from GEICO that were not compensable under the no-fault laws, or were compensable only at a much lower rate.

### D.   GEICO Should Be Granted Judgment On Its Unjust Enrichment Claim Against the Retail Defendants

GEICO's Complaint also establishes its entitlement to recover the money paid to the Retail Defendants based on a claim for unjust enrichment. Recovery for unjust enrichment requires allegations establishing that: (i) the Retail Defendants were enriched; (ii) at GEICO's expense; and

(iii) that equity and good conscience require restitution. See Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir.2000); Golden Pacific Bancorp v. F.D.I.C., 273 F.3d 509, 519 (2d Cir. 2001). Given the allegations detailing the massive fraudulent scheme committed by the Defaulting Defendants against GEICO resulting in the payment of more than $26,400.00 to the Retail Defendants, GEICO has more than sufficiently established a claim for unjust enrichment. (See, Exhibit "A" at ¶¶ 73-78).

### E.     GEICO is Entitled to Pre-Judgment Interest on its Fraud Claims

GEICO is entitled to pre-judgment interest against the Defaulting Defendants on its fraud claims. See Tosto v. Zelaya, 2003 U.S. Dist. LEXIS 8085, at *23-*24 (S.D.N.Y. May 12, 2003). Indeed, under New York law, an award of pre-judgment interest on damages for fraud is mandatory. See Manufacturers Hanover Trust Co. v. Drysdale Sec. Corp., 801 F.2d 13, 28 (2d Cir.1986).

The award of prejudgment interest is a substantive issue, governed here by the state substantive law of the forum state in which the federal court sits, namely New York law. See Terwilliger v. Terwilliger, 206 F.3d 240, 249 (2nd Cir. 2000)(applying state law to the question of prejudgment interest in a diversity case); Schwimmer v. Allstate Ins. Co., 176 F.3d 648, 650 (2d Cir. 1999) (same). The source of the right to pre-judgment interest in New York is set forth in N.Y. C.P.L.R. § 5001. Specifically, C.P.L.R. § 5001(b) states that "[i]nterest shall be computed from the earliest ascertainable date the cause of action existed". Furthermore, pre-judgment interest is calculated at the non-compounded rate of nine percent per annum. N.Y. C.P.L.R. §§ 5001(a), 5004. Here, it is suggested that interest be calculated from the first day following the year in which the payments were made on the fraudulent claims by GEICO to the Retail Defendants. St. Paul Fire & Marine Ins. Co. v. Fox Insulation Co., 1999 WL 782333 at *1 (W.D.N.Y. September 30, 1999); American Home Assurance Co. v. Morris Industrial Builders, Inc., 192 A.D.2d 477, 597 N.Y.S.2d 27, 28 (2d Dept. 1993)(applying pre-judgment interest according to dates when payments made by insurer to its insured). This method is consistent with the purpose of pre-judgment interest, which is

to "compensate plaintiffs for the use of funds that were wrongfully diverted by the defendant." Lewis v. S.L. & E., Inc., 831 F.2d 40 (2d Cir. N.Y. 1987). The basis for GEICO's proposed pre-judgment interest calculation under this method (a method more conservative than that permitted under the CPLR) totals $10,471.32. See Calabrese Decl. – Exhibit "D".

## III.   Joint and Several Liability Should Be Imposed

The Complaint in this case alleges significant facts establishing that the Defaulting Defendants acted jointly and/or concurrently to produce a single injury, and as a result, should be held jointly and severally liable for GEICO's damages based on its common law fraud claims, aiding and abetting fraud claims and unjust enrichment claims. See County of Suffolk v. Amerada Hess Corp., 447 F. Supp. 2d 289, 297 (S.D.N.Y. 2006); Ravo v. Rogatnick, 70 N.Y.2d 305, 520 N.Y.S.2d 533, 514 N.E.2d 1104 (1987). The injury that GEICO suffered as a result of the scheme perpetrated by the Retail Defendants and the Wholesale Defendants is indivisible and was caused by the coordinated activity of each of the Defaulting Defendants. This should render them collectively liable for GEICO's damages which are in excess of $26,400.00. Mazyck v. Long Island R.R., 896 F. Supp. 1330, 1333 (E.D.N.Y. 1995).

## CONCLUSION

For the reasons stated herein, GEICO's application for default judgments against the Defaulting Defendants should be granted.

Dated: Uniondale, New York
        March 22, 2013

Respectfully submitted,

RIVKIN RADLER LLP

By:_____

Barry I. Levy
Michael A. Sirignano
Justin A. Calabrese
926 RXR Plaza
Uniondale, NY 11556-0926
Tel.: (516) 357-3000
Fax: (516) 357-3333

*Counsel for Plaintiffs, Government Employees Insurance Co., GEICO Indemnity Co, GEICO General Insurance Company and GEICO Casualty Co.*

19